Syllabus.

## Wytheville.

### DUNN AND OTHERS v. STOWERS AND OTHERS.

#### June 28, 1905.

1. MARRIED WOMEN—*Statutory Separate Estate—Contract to Sell.*—A contract by a married woman, in which her husband unites, for the sale of her statutory separate estate acquired under the act of April 4, 1877, may be enforced in equity either for or against her.

2. SPECIFIC PERFORMANCE—*Tender of Deed.*—When the vendee of land calls upon the vendor by bill for that purpose, to exhibit his title so that the purchaser may accept it if found to be good, or have the contract rescinded if bad, it is not necessary that the vendor shall be able to make a complete deed at the time he files his answer. It is sufficient if, with the aid of the court, he can tender a marketable title at the hearing.

3. MARRIED WOMEN—*Statutory Separate Estate—Contract to Sell—Code, Sec. 2502.*—Section 2502 of the Code relating to the effect to be given to certain conveyances made by married women and the covenants therein contained does not in any way prohibit her from contracting to sell her statutory separate estate, or inhibit or interfere with a court of equity in the enforcement of such contracts.

4. EQUITY—*Specific Performance—Parties—Cross-bill—Complete Relief.*—Where husband and wife have contracted to sell their joint lands to a purchaser, who gives bond payable to the husband only, and a bill is thereafter filed by the purchaser against the husband and the heirs and distributees of the wife, asking that they exhibit their title so that the purchaser may accept it if good and reject it if bad, and no question is raised about the right of the husband to collect the whole purchase-money, either by the purchaser or the distributees of the wife, the personal representative of the wife is not a necessary party to the suit, and no prayer that the answer of the husband and distributees of the wife be treated as a cross-bill is necessary to enable the court, upon being satisfied that the title is good, to ascertain the balance due on the purchase price and give a decree therefor against the purchaser. Upon reference to a commissioner in such case to report on the condition of the title, and also to report anything else deemed pertinent by himself, or required by any party in interest, it is not error for the commissioner to report the balance of purchase money due the vendor, and where such report is confirmed by the trial court with-

out exception on that account, no objection thereto can be raised in this court, especially when there is no suggestion of error in the calculations made or the amount reported by the Commissioner. When a court of equity has once acquired jurisdiction of a cause on equitable grounds, it will go on and do complete justice between the parties.

5. DEED—*Signature by Woman—Presumption as to Life of Husband.*—Where a purchaser of land has been in the continuous, actual, open and exclusive possession thereof from the date of the conveyance to him, and the conveyance is perfect on its face and no adverse claim to the land has been asserted by anyone, it will be presumed that a woman who had been married but who signed the deed as grantor more than thirty years ago had no husband living at the date of her conveyance.

6. SPECIFIC PERFORMANCE—*Doubtful Title—Title by Adverse Possession.*—A purchaser will not be compelled, in equity, to accept a doubtful title, but he may be compelled to accept one resting upon a hostile, adverse, and uninterrupted possession under color of title which has continued a sufficient length of time to bar the rights of any possible claimant.

7. VENDOR AND PURCHASER—*Warranty by Vendor's Heirs— Waiver.*—A purchaser of land cannot refuse to accept the deed and warranty of the vendor's heir, where, after the death of the vendor, he recognizes the contract as still binding on him, retains possession and makes payments, and there has, in the meantime, been great depreciation in the value of the land, and he has made no objection to the title until sued for the purchase-money.

Appeal from a decree of the Circuit Court of Bland county. Decree for defendants.    Complainants appeal.

*Affirmed.*

The opinion states the case.

*J. H. Fulton, Fulton Kegley* and *R. W. Williams,* for the appellants.

*Henry & Graham,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

James M. Stowers, the principal appellee here, and Mary U. Stowers, his wife, spoken of in this record as Polly M. Stowers, owned and occupied three contiguous tracts of land situated in the county of Bland, one containing 202 acres, another 39¾ acres, and the other 93 acres; and they had been in the pos-

session of these lands for years prior to the contract for their sale hereinafter mentioned. Mrs. Stowers acquired 9/14 of the lands as the sole heir at law of her father, Joseph Lambert, who died in March, 1880; and James M. Stowers acquired title to the residue of the lands by conveyances to him from parties who acquired title from Elijah Lambert, who owned jointly with his brother Joseph the said lands, and died prior to the death of Joseph Lambert.

On the 5th of September, 1890, James M. Stowers and wife entered into a written contract, commonly known as a title bond, with appellants, whereby they agreed and bound themselves to sell to Dunn and his associates the said tracts of land for a consideration of $4,000, which was to be paid to James. M. Stowers alone, and for which sum, divided into three equal payments, bonds were executed by Dunn and his associates to James M. Stowers, payable respectively on May 1, 1891, November 1, 1891, and May 1, 1892. The contract or title bond stipulated that the two first named tracts of 202 acres and 39¾ acres, were to be conveyed to the vendees with covenants of general warranty, and the other tract of 93 acres to be conveyed with special warranty—that is of such right, title, and interest therein as Stowers and wife had.

In May, 1891, Stowers and wife surrendered the land to appellants, who have been in possession thereof continuously from that time.

A number of payments were made upon the several bonds, between May 1, 1891, and July 2, 1895, but none of them paid in full; all of which payments were made to James M. Stowers, and several of them made after the death of Mrs. Stowers, which occurred on January 5, 1893. Although repeatedly and earnestly importuned by James M. Stowers to pay the balance due on these notes, appellants paid nothing thereon after the last payment above mentioned in July, 1895, and on the 29th day of September, 1896, another contract was entered into between the appellants, as parties of the first part, and James M. Stowers, of the second part, which recites that the parties of

the first part had purchased the lands (as hereinbefore stated), since which time Stower's wife had died, leaving the title in doubt, and it was agreed that Stowers should bring a suit in the Circuit Court of Bland county for the collection of the purchase money still due him—"said suit is not to be defended by said purchasers, except to present the law of the case based upon the exact facts as to the status of said title, and shall abide by said decision of said court, and are to pay the costs of said suit; and should said court decide that said Stowers cannot make a good title to said land, then the said parties hereto are still to try all honorable and fair means to adjust the said questions in the premises, and if they cannot agree on a basis of settlement then they are to leave the matter to arbitration upon the terms as follows:"   .   .   .

Stowers then brought his suit at law on the purchase money bonds, and thereupon appellants, without making any apperance in that suit, as stipulated for in the contract just referred to, filed this bill in equity against James M. Stowers and the children of himself and his wife, Polly M. Stowers, deceased, praying an injunction to supersede the action at law; that the defendants might produce before the court the title of James M. Stowers and wife to the lands, "that the same might be inspected by the court; and that all questions concerning the title to the lands might be adjudicated, so that if good your orators might have proper·conveyances executed, and if not good the said contract (of September 5, 1890,) be rescinded."

Polly M. Stowers left five children, two of whom were under the age of twenty-one years at the time of her death.   James M. Stowers and his three adult children filed an answer to said bill, setting out all of the facts hereinbefore mentioned and others, denying all allegations of the bill not specifically admitted to be true and claiming that the title to the lands in question was entirely good, exhibiting with the answer the title deeds therefor, and also a deed duly executed and acknowledged by James M. Stowers and four of his children, three of whom

were then adults, and tendered the deed for delivery to appellants upon the purchase money for the lands being paid in full by them, which deed conformed to the provisions of the contract of sale as to covenants of title, to which answer appellants filed a general replication. A guardian *ad litem* was duly appointed for the infant defendants, and they and the guardian *ad litem* filed their answer to the bill. Upon these pleadings the Circuit Court made its decree of January 29, 1900, referring the cause to W. B. Kegley, who was appointed special commissioner for the purpose, to inquire into and report fully all the facts connected with the title to the lands in question necessary or material to enable the court to pass upon the question of the validity thereof, whether said title was good or bad, and if defective in what respect; and to report anything else deemed pertinent by himself, or required by any party in interest.

The cause dragged along before Commissioner Kegley until October 7, 1903, when he filed a very full and satisfactory report in response to the decree of reference, taking the ground that the title to the lands in James M. Stowers and his children was good, unless the following matters suggested by him impair its validity, viz.:

1. Mary Kensil, one of the heirs of Elijah Lambert sold her 1/7 interest in the land to James M. Stowers, and having died before making a deed thereto, her interest was afterwards conveyed by John Kensil, her husband, and A. W. Shewey and Anna, his wife, James Crabtree and Agnes, his wife, and Barbara Scott, the deed bearing date October 14, 1868; and the defect suggested by the commissioner is: "It does not appear on the face of this deed that the grantors are all the heirs at law of Mary Kensil, neither does it so appear from the evidence in the case, unless the statement of Mr. Stowers that this interest was conveyed to him by the heirs of Mary Kensil is sufficient on this point: It would seem that Barbara Scott, one of the

grantors, was or had been married, but it does not appear whether her husband, if she had been married, was living or not at the time of the execution of the deed. There is no evidence, so far as I can find, in the record on this point."

2. James M. Stowers acquired a 2/7 interest in the lands in question from one James R. Bales, and the deed therefor was all sufficient and duly recorded. One of these 1/7 interests was acquired by Bales from Margaret Perkey, a sister of Elijah Lambert, deceased, by deed of release and quit claim, dated October 7, 1869, duly executed and recorded. The suggestion of defect made by the commissioner is, "it appears in the evidence that Margaret Perkey was married, but it does not appear whether her husband was living at the time of the execution of this deed. If he was living, then he should have united in the deed."

In the first suggestion is involved the possible right of curtesy in the husband of Barbara Scott in 1/4 of 1/7 of one half of the land; and in the second is involved the possible right of curtesy in the husband of Margaret Perkey in 1/7 of one half of the land.

Commissioner Kegley, as he was authorized by the general clause of reference in the decree, at the request of counsel for James M. Stowers and children, made and filed as a part of his report a statement showing the balance due to James M. Stowers on the said bonds of appellants to be $1,258.79, with interest on $785.62 from October 7, 1903.

The cause coming on to be heard upon the pleadings and exhibits therewith, and theretofore considered, and the report of Commissioner Kegley and the depositions and exhibits therewith, the Circuit Court made its decree of December 7, 1903, appealed from, which holds, "that the contract for the sale of the lands in the bill and proceedings mentioned, and executed between the complainants and James M. Stowers and wife, dated the 5th day of September, 1890, is valid and enforceable, notwithstanding the death of Mrs. Stowers; that any question

of the loss of the general warranty of the wife, if ordinarily sufficient to bar specific performance was waived by complainants who after her death recognized the contract as subsisting by retaining the possession of the land and making payments thereon." And the court being of opinion that it should settle the entire controversy in the cause, and not remit either party to any remedy at law, proceeded to decree further as follows: That said report of Commissioner Kegley be confirmed; that the title of the said land is good and marketable, and that the contract for the sale of said land be specifically enforced, and to that end that James M. Stowers recover of appellants (complainants below) the sum of $1,258.79, with interest on $785.62 from October 7, 1903, and the costs of this suit, for which said James M. Stowers might have execution when the deeds thereinafter referred to are executed and filed with the papers in the cause, said sum decreed being the balance of the purchase money due for the land, as shown by Commissioner Kegley's report. And, further, that James M. Stowers and his children, heirs at law of Mary M. Stowers (Polly M. Stowers), having executed and filed with their answer a deed to said land, conveying the same to said purchasers, the clerk of the court is directed to deliver same when the purchasers pay the decree thereinbefore rendered against them for purchase money, but as two of said grantors, viz.: Rufus M. Stowers and Samuel C. Stowers, were infants at the time of the execution of said deed, W. J. Henson was appointed a special commissioner, who as such should execute a deed conveying the interest of the said Rufus M. and Samuel C. Stowers in said land to said purchasers, and if either of them should have attained the age of twenty-one years such one should join in the deed conveying with general warranty the tracts of land mentioned in said contract, which provided for conveyance with general warranty, and with special warranty the tract for which the contract provided for conveyance with special warranty.

Pursuant to the decree Rufus M. Stowers, who had attained full age, and W. J. Henson, commissioner, duly executed and filed with the clerk of the court March 17, 1904, a deed, as required by the decree.

As we have seen, Polly M. Stowers acquired title to 9/14 of the lands which are the subject of this suit, by descent from her father, who died in March, 1880, the title to which came to her, as Commissioner Kegley reports, "perfect and free from question," and counsel for appellants now concede in their reply brief that under the law as it stood at the date of the contract of September 5, 1890, a married woman could make a valid sale of her statutory separate estate. This being conceded, it is settled that a contract made by a married woman for the sale of her separate estate may be enforced in a court of equity in suits for or aginst her. This was done in *Gentry* v. *Gentry,* 87 Va. 478, 12 S. E. 966, where the contract was entered into between the parties on the 3rd day of July, 1888, and whether the estate the married woman contracted to sell was an equitable or a statutory separate estate does not appear from the reported case, but it does appear that it was her separate and sole property, and this court affirmed the decree of the Circuit Court enforcing specific execution of the contract.

In *Va. Coal & Iron Co.* v. *Roberson,* 88 Va. 116, 13 S. E. 350, the land in controversy was the separate estate of the wife, acquired under the statute enacted April 4, 1877, known as the "Married Woman's Act," and there was a deed made by Roberson and wife to Chas. W. Kilgore, dated the 1st day of March, 1880. The acknowledgment of the parties thereto being found defective, Roberson and wife refused to perfect it. Suit was brought against them by the owners of the land to compel a prefection of the deed, which suit was resisted by Roberson and wife, who made the contention that the wife could not be made to execute a deed. The court held that the certificate was imperfect, but that the imperfect deed constituted a contract under the married woman's act, and specific performance could be

enforced.    It therefore reversed the lower court and decreed that the married woman should be compelled to make a proper deed, and upon her failure or refusal to do so the court could have a commissioner execute a deed so as to conclude her rights.

And in the case of *Clinch River Veneer Co.* v. *Kurth,* 90 Va. 737, 19 S. E. 878, it was also held that the married woman's deed therein involved was defective, but was enforceable in equity as an executory contract.    This case came under review in *Giel* v. *Giel*, 101 Va. 773, 45 S. E. 325, where the court declared that the opinion in the case of *Clinch River Veneer Co.* v. *Kurth, supra,* was not sound so far as it held the certificate of the deed therein involved to be defective, and held a certificate with a similar omission to be good; but no disapproval was announced as to the fact that such a deed, if defective, might be treated as an executory contract, upon which a suit might be prosecuted for specific performance of the contract.

*Wood* v. *Walker,* 92 Va. 27, 22 S. E. 523, is cited as authority for the proposition that a good title must be shown and a valid deed tendered in order to authorize the specific enforcement of a contract for the sale of land; but that case has no bearing upon the case in hand.    In a case where the rule in *Wood* v. *Walker* applies, the court will not execute a contract at the instance of a vendor unless the deed is made, and where the vendor has the initiative, as in that case, he should do all the court could require him to do by his pleadings in the beginning. As remarked by counsel for appellees, there are many cases where specific performance may be sought, where it would be impossible to file a perfect deed until the court had passed upon the rights of the parties and declared the kind of deed necessary to be made, or where the court through a commissioner could carry out its decree.

In this case appellants called upon appellees to exhibit their title to the court in order that it might be inspected by the court, and all questions concerning the title might be adjudi-

cated, so that if good appellants might have proper convey-
ances executed, and if not good that the contract by which
Stowers and wife agreed to sell to them the lands be rescinded
and the purchase money theretofore paid refunded.   With their
answer, as we have seen, appellees tendered a properly exe-
cuted deed for the land to the extent of the interest of Stowers
and all of the children and heirs of Polly M. Stowers, his wife,
with the exception of two, who were then under age; and the
decree of the court provided for a proper conveyance from these
two of their interest in the lands to the appellants, thus vesting
in them a good and marketable title to the lands, if the defects
in the title suggested by Commisioner Kegley did not exist, as
to which we will have more to say later.

Counsel for appellants seem to think that they could not
acquire title to the lands without a deed executed by Stowers
and his wife, as required by section 2502 of the Code, since
married women can only convey title to their estate according
to statutory requirements, and *Augusta National Bank* v. *Beard,*
100 Va. 687, 42 S. E. 694 is cited as authority for the propo-
sition.   It is true it was held in that case that the married
woman's law does not by implication repeal section 2502;
but all that was decided is that section 2502 could have no other
interpretation given to it than that it frees a wife from lia-
bility on a covenant of warranty contained in the conveyance
as completely as did the prior statute, except when made with
reference to her separate estate as a source of credit, and no
reference being made in the deed to the wife's separate estate,
it was as if there were no covenant of warranty therein con-
tained, so far as the wife was concerned.   It cannot be main-
tained that this statute would prohibit a married woman from
carrying out her executory contracts, or inhibit or interfere
with a court of equity in enforcing against her her contracts
with reference to her separate estate, for if such was the case
the greater portion of the married women's acts would be abso-
lutely nugatory.

Polly M. Stowers was bound by her contract, enforceable in a court of equity, to convey her interest in the lands to appellants, and all that a deed from her husband and herself, executed as provided by section 2502, would have availed the appellants, and which they lost by her death, was her contingent right of dower in that portion of the lands which belonged to her husband; and this is obviated by the fact that she was dead when title to the lands was tendered to appellants by the deed from Stowers and the adult children, and that of the guardian *ad litem* for the infant.

By appellants' second assignment of error they assert that the personal representative of Polly M. Stowers should have been before the court when the decree was rendered, and that such personal representative had a substantial interest in the case.

The bill was filed by appellants for the purpose, primarily of enjoining an action at law which had been instituted against them on the purchase money bonds executed by them to James M. Stowers for the land in controversy, with the further prayer that the defendants exhibit title to the lands, etc., and they seem not then to have regarded the personal representative of Polly M. Stowers as a necessary party to this suit, as he was not made a party. Nowhere and at no time throughout the proceedings in this suit have appellants questioned the right of James M. Stowers to receive the purchase money. Polly M. Stowers in signing the contract stipulated that the money should be paid to him, and by it she and those claiming under her as her heirs and distributees were bound, so far as appellants were concerned. Why this was done we know not, nor need it be known, as she had a perfect right to give the money to her husband if she so desired, and she had the right to contract with them so as to bind them to pay it to her husband, as she did. Her children and her distributees were before the court and none of them disputed the right of their father to receive the money.

In *Strother* v. *Hull*, 23 Gratt. 652, which was a suit for a

settlement of an administration account and the distribution of the estate, it was contended that as one of the legatees died a minor and the personal representative was not before the court, it was certainly irregular to proceed to a distribution of the estate of the deceased minor, although she died a minor, intestate and unmarried, without bringing her personal representative before the court, but the court held that to have brought the personal representative of the deceased party before the court would have been the merest matter of form, as all the parties beneficially interested in the estate were before the court, and it was not pretended that there were outstanding debts to collect or to pay other than the estate in the hands of appellant, and no one could be injured by the absence of the personal representative of the deceased party interested.

In the case at bar, it has not been suggested that there were outstanding debts due to Polly M. Stowers to be collected, or debts against her to be paid, and we can see no reason whatever why her personal representative should have been made a party.

Under the third assignment of error it is urged that the Circuit Court erred in sustaining so much of Commissioner Kegley's report as reported a balance due on the purchase money bonds, because no such question had been raised in the pleadings in the cause and this question had not been submitted to the commissioner.

There was no exception taken to Commissioner Kegley's report and the general clause of reference in the decree was ample to authorize the statement in his report, made at the instance of a party to the cause, showing a balance due on the bonds payable to James M. Stowers.

The rule in such cases as laid down in *Walters* v. *Bank,* 76 Va. 12, and sanctioned in numerous cases following, is that when a court of equity has once acquired jurisdiction of a cause on equitable grounds, it may go on to a complete adjudication, even to establish legal rights which would be otherwise beyond the scope of its authority.

As was said in the opinion in *Parker* v. *Deé,* 2 Chy. Cas. 200, "when this court can determine the matter, it shall not be a handmaid to other courts, nor beget a suit to be ended elsewhere."

In this case the jurisdiction of the court was invoked by appellants, and in it the court took jurisdiction of all the parties interested and the subject matter of litigation ; and the appellants cannot be heard to deny  the jurisdiction of  the court to settle all matters in controversy between the parties in accordance with the well established rule which we have just quoted. Especially are they not to be heard to question in this court the authority of the Circuit Court to ascertain and determine the amount due from them on their purchase money bonds for the subject matter of the litigation, when there is no suggestion of error in the calculation made and reported by the commissioner, whose report was confirmed without exception.

The fourth assignment of error relates to the suggestions made by the commissioner as to the deeds from John Kensil and others to James M. Stowers, and from Margaret Perkey to James Bales.

Through all the delay in the payment of the purchase money for the lands in question, and the many interviews between appellants and James M. Stowers, they made no suggestion whatever that they objected to the title to the lands, until threatened with a suit on their bonds by James M. Stowers, and in addition to this they nowhere during the taking of depositions, and when they were afforded an opportunity to do so, made inquiry as to whether Barbara Scott or Margaret Perkey were married at the date of the deeds in question. The conveyance of the Kensil interest was made to James M. Stowers on the 14th of October, 1868, which was about thirty years before the institution of this suit, and more than thirty-five years before the final decree rendered therein, and from the testimony of James M. Stowers, which is not contradicted, he had been in possession of this land ever since he bought it.   The conveyance of Margaret Perkey to James Bales bears date the 17th day of Sep-

tember, 1869, about thirty-four years before the final decree in this cause. So that James M. Stowers and the apellants together had continuous, actual, open and exclusive possession of the lands conveyed by Barbara Scott and Margaret Perkey for more than thirty years before this suit was brought. These facts and circumstances, together with the further fact that the deeds executed by Barbara Scott and Margaret Perkey are perfect upon their face, raise, we think, a presumption that neither of them had a husband living to join in the deeds.

Maupin, in his work on Marketable Title to Real Estate, section 292, says: "A purchaser may be compelled to take a title resting upon a hostile, adverse and uninterrupted possession under color of title which has continued a sufficient length of time to bar the rights of any possible adverse claimant."

The same author, at p. 703, discussing title dependent upon adverse possession, where a vendor relies on the statute of limitations to cure a defect in his title which is contested by his vendee, says: "There must be some present ground to apprehend that the title will be disputed and the means of sustaining it unavailing to the purchaser."

A similar question was raised in *Gibson* v. *Brown*, (Ill.) 73 N. E. 578, in which it was said that while a court of equity will never force upon a vendee a doubtful title, immaterial defects and technical objections, where a purchaser gets substantially what he contracts for, will not be permitted to be set up to defeat a decree of specific performance.

Under the fifth assignment of error appellants contend that there could be no proper decree in this case against them for the balance due on the purchase money without filing a cross-bill to which the personal representative of Polly M. Stowers would be a necessary party.

It is true that an answer to a bill often asks that the answer be treated as a cross-bill, if the respondent wishes affirmative

relief which would be antagonistic to the relief sought in the bill, with the right of complaint to respond thereto by answer; but whether a cross-bill be resorted to or not depends upon the attitude the complainant assumes.

James M. Stowers had sued to recover of appellants the amount due on the purchase money bonds he held, which were long past due, and the bill in this cause was filed by appellants making James M. Stowers and the heirs at law of Polly M. Stowers, naming them, parties defendant thereto, the prayer of the bill being "that they be required to produce before this court the title of said James M. Stowers and said Polly Stowers, or either of them, to said land, in order that the same may be seen and inspected by the court, and all questions concerning said title may be adjudicated so that if good your orators may have proper conveyances executed, and if not good that said contract be rescinded and the purchase money so paid by them be refunded by the said James M. Stowers for the loss of the land."

This was plainly a bill for specific performance of the contract, if the title which they sought to bring out proved to be good; and with the alternative prayer, that if it was not good, the contract be rescinded. The decree in the cause, which is the result of the pleadings and proof demonstrates the fact that there was no need of the personal representative of Polly M. Stowers to be made a party thereto, as the decree simply carried out the contract in requiring the appellants to pay the money directly to James M. Stowers, to whom they agreed by their contract to pay it.

Under the sixth assignment of error, complaint is made of the action of the court below in requiring appellants to accept the deed executed by its commissioner on behalf of the infant defendants; and this assignment rests upon the theory that appellants after the death of Polly M. Stowers could not be compelled to accept the warranty of the heirs and especially to accept the commissioner's deed on behalf of the infants.

We are wholly unable to see any merit in this assignment.

As we have seen, the court, after declaring that the contract of September 5, 1890, is valid and enforceable, notwithstanding the death of Mrs. Stowers, declares that any question of loss of the general warranty of the wife, if ordinarily sufficient to bar specific performances, was waived by appellants, who after her death recognized the contract as subsisting by retaining the possession of the lands and making payments thereon. This declaration is sustained by the facts already stated, and if necessary other equally cogent reasons for it might have been given, among them, that appellants desired and obtained possession of the lands "for prospecting for minerals or mining for same," and, having ascertained that the purposes for which they desired the lands had failed, without paying the purchase money, they retained possession of the lands down to the time of the institution of this suit, and to the present day; and the lands, profitable to James M. Stowers for farming purposes when he surrendered the possession thereof, and long prior thereto, have become greatly deteriorated, if not entirely worthless for those purposes. James M. Stowers was asked why he and his wife did not convey the lands to complainants before his wife's death, to which he made reply, "Because we had not received our money; we were ready to do it." The money was due, as we have already said, when Mrs. Stowers died, and James Stowers further testified that he had made every exertion possible to collect it, except to sue upon the bonds; so that if the warranty of Mrs. Stowers was necessary or even desirable to appellants they have no one to blame for their failure to get it except themselves.

The seventh and last assignment of error refers again to the refusal of the court to rescind the contract, and we do not deem it necessary to discuss this question further than has already been done.

Upon the whole case we are of opinion that the decree of the Circuit Court should be affirmed.

*Affirmed.*