Syllabus.

## Staunton.

## WOOD V. LESTER AND OTHERS.

### September 17, 1919.

1. APPEAL AND ERROR—*Burden of Showing Error—Weight of Decree.*—The decree of the trial court is entitled to great weight upon appeal and ought not to be reversed unless the appellate court is satisfied that it is wrong, and the burden is upon the appellant to show error, and to satisfy the appellate court of such error.

2. ESTOPPEL—*Husband and Wife—Wife Permitting Husband to Obtain Title to Her Realty.*—Where it is claimed that a wife is estopped to assert her title to realty which she has permitted to stand in the name of her husband, the familiar rule that resulting prejudice is essential to an estoppel by acts *in pais* must be applied, and such estopppel can only be asserted by one who has extended credit to the husband in reliance on his apparent ownership of the realty.

3. ESTOPPEL—*Husband and Wife—Wife Permitting Husband to Obtain Title to Her Realty—Case at Bar.*—In the instant case, complainant, a creditor of the husband, had definite and specific notice of the wife's equitable title to all of the property involved before the husband's debt to him was contracted, and hence could not maintain that a subsequent conveyance of the property by the husband to the wife was in fraud of his rights.

4. EQUITY—*Jurisdiction—Complete Relief—Statutory Limitation—Fraudulent and Voluntary Conveyances—Personal Judgment in Decree to Set Aside Conveyance.*—While it is an accepted equitable doctrine that, when a court of equity has once acquired jurisdiction of the parties and subject-matter, it will afford complete relief, the legislature, in conferring the right on a creditor to go into equity for the purpose of setting aside a fraudulent conveyance before obtaining judgment for his debt, had the power to limit the jurisdiction of the court, and has, in section 2460 of the Code of 1904, by clear implication imposed a limitation to the effect that, if the creditor fails to establish his right to set aside a conveyance alleged to be voluntary and fraudulent, and there is a decree against him on this point, the court has no further jurisdiction over the parties and cannot enter a personal decree against the debtor.

22

Appeal from a decree of the Corporation Court of city of Bristol. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*I. M. Clingenpeel* and *White, Penn & Penn,* for the appellant.

*Price & Pennington,* for the appellee.

PRENTIS J., delivered the opinion of the court.

The judge of the trial court (Hon. Floyd H. Roberts) thus states the issues involved:

"S. S. Wood filed his bill in the Circuit Court of Washington county in September, 1913, to set aside, as fraudulent and voluntary, under sections 2458 and 2459 of the Code, the deed of March 3, 1913, of A. P. Lester to his wife, Nancy J. Lester, and made a part of the bill as Exhibit 'E,' which is hereinafter so referred to. The cause was removed to this court by order recently entered.

"Complainant alleges that he sold a certain distillery, sawmill, gristmill, with equipment, in Henry county, Virginia, to J. S. Lester at the price of $5,500, $1,000 thereof in cash, and the residue of $4,500 represented by three negotiable notes of J. S. Lester to A. P. and H. S. Lester, payable in six, twelve and eighteen months after May 6, 1912, and endorsed by them. J. S. Lester and H. S. Lester are sons of A. P. and Nancy J. Lester. Complainant further alleges that after said notes were endorsed by A. P. Lester, he executed the deed to his wife, Exhibit 'E,' conveying all real and personal property to her, and that A. P. Lester was involved at the time.

"The defendants in their answers claim that there was misrepresentation and fraud on the part of S. S. Wood in the procurement of the alleged contract of sale to J. S. Lester, and failure in the consideration thereof. These defenses are set out in detail, and there is a great deal of evidence, pro and con, in the record concerning them.

"In addition to these defenses, Nancy J. Lester, in her answer, avers that the real and personal property covered by Exhibit 'E' at no time belonged to A. P. Lester; that he, theretofore, only held same in trust for her; that at the time of their marriage, A. P. Lester had nothing; that the property which grew into the property covered by Exhibit 'E' came by her, and that before she would sell, on November 19, 1897, to Henry Ascue the homestead of one hundred and forty-two acres in Russell county the contract (Exhibit No. 1 to her answer) of November 2, 1897, with her husband was entered into. By that contract it was provided, in substance, that in consideration of $3,000 and the further consideration that she would convey her lands and personalty in Russell county, Virginia, title to which it is averred had been taken in his name, and allow him to reinvest the proceeds in his name, but with the understanding and upon the condition that he would, upon her demand or request, convey to her, 'by a good and sufficient deed,' all real and personal property and the *'issue'* thereof at the time of such request or demand. She further avers that at the time of such request or demand, S. S. Wood extended the credit and took A. P. Lester's endorsement, that Wood knew of this contract and trust, that full notice was given to L. J. Wood, the father and agent of S. S. Wood, and the endorsement was obtained after full information of the trust paper and its purport, and that at the time it was further explained to L. J. Wood, in her presence by A. P. Lester, that she had already made

demand for the deed according to said contract, and that he was going to make such deed. She further states that the existence of the contract and the trust as a result thereof has all along been admitted and recognized by her husband, 'that during all these years her real ownership of the property has been acknowledged in the family by her husband and her sons, and that no important transaction of any kind or character has been had without her advice and counsel.' "

Nancy J. Lester had satisfactorily established by competent evidence the material allegations of her answer as to the contract of November 2, 1897, and the trust resulting therefrom.

[1] The decisive question in the case is whether or not full information was given to the complainant creditor with reference to the contract, the trust resulting therefrom, and the consequent equitable ownership of the property by Mrs. Lester before or at the time the notes were endorsed. If, as the complainant claims, he had no notice or knowledge of her title, and he extended the credit upon the faith of A. P. Lester's endorsement under the belief that he was the owner of the property, then, there is other evidence from which we might conclude that Nancy J. Lester is estopped from asserting her title thereto as against a creditor so deceived by her acquiescence. While it may be true that mere silence is not sufficient to estop a wife under such circumstances, in this case there are many facts from which it might be inferred that to permit her to claim as against a creditor who has been deceived by her conduct for so many years would operate as a fraud upon his rights which a court of equity could not sanction. Upon this decisive question there is the positive testimony of four witnesses, three of whom are unimpeached, to the effect that before A. P. Lester endorsed

the notes which are here involved he gave the complainant's agent full notice that Nancy J. Lester was the equitable owner of all of the property which stood in his name, and that she had demanded the conveyance thereof to her. While there is much in the attending circumstances to support the contentions of the complainant, he must fail in this case unless we are prepared to discredit and ignore the testimony of these witnesses. While the sharp conflict in the evidence leaves the impartial mind in a state of uncertainty as to the facts, this appears to be a case in which we should apply the doctrine that an appellate court ought not to reverse the decree of a trial court, which is entitled to great weight, unless satisfied that it is wrong. The burden in this court is upon the party complaining to show error, and to satisfy this court of such error. *Shipman* v. *Fletcher*, 91 Va. 487, 22 S. E. 458; *Smith* v. *Smith*, 92 Va. 696, 24 S. E. 280; *Morrisette* v. *Cook & Bernheimer Co.*, 122 Va. 595, 95 S. E. 449.

In *Steagall* v. *Steagall*, 90 Va. 73, 17 S. E. 756, it was held that a married woman is not estopped from claiming as against her husband's creditors a resulting trust in land paid for by her father and intended to be hers, but conveyed to the husband by his collusion with the grantor, although she and her father failed to take positive action during his lifetime. In that case the married woman did not know how the title stood, nor what her father's intentions were, but did assert her title to the land before it was assailed.

In *Spence* v. *Repass*, 94 Va. 716, 27 S. E. 583, there was a suit to set aside a deed made by a husband to a wife, upon the ground that it was a fraud against his creditors. The land was conveyed to the husband in 1880, though paid for by the wife. Upon discovering that the

land had been conveyed to her husband, she promptly objected and claimed that it should be conveyed to her, and demanded that her rights be recognized; whereupon, to avoid the expense of a new deed, she accepted her husband's bond for the amount of money which she had invested, and then in 1894, this bond was surrendered in consideration of a deed from her husband conveying the land to her, and this conveyance was upheld as against his complaining creditors.

In *Silling* v. *Todd*, 112 Va. 802, 72 S. E. 682, Ann. Cas. 1915 D, 643, the land was bought and paid for by a wife, but by mistake of the scrivener and without the direction of either the husband or the wife, the conveyance was made and delivered to him. This deed was not recorded for about two years, and about the same time that the deed to the husband was recorded, a conveyance of the same property from the husband to the wife was also recorded, and the wife was held to be invested with both the legal and equitable title to the property as against the creditors of the husband.

[2] A comprehensive note upon the subject of the estoppel of a wife who permits her husband to retain title to her realty, to assert such title as against one extending credit to the husband in reliance upon his apparent ownership, is found to the case of *Goldberg* v. *Parker* (87 Conn. 99, 87 Atl. 555, 46 L. R. A. [N. S.] 1097), in Anno. Cas. 1914C, 1059, 1066. Numerous authorities are there cited. It appears, however, to be held without dissent that the familiar rule that resulting prejudice is essential to an estoppel by acts *in pais,* must be applied where it is claimed that the wife is estopped to assert her title to realty which she has permitted to stand in the name of her husband, and that such estoppel can only be asserted by one who has extended credit to the husband in reliance on his apparent

ownership thereof. Citing among many cases, *Brown* v. *West,* 70 Ga. 201; *Burt* v. *Kuhnen,* 113 Ga. 1143, 39 S. E. 414; *Chadbourn* v. *Williams,* 45 Minn. 294, 47 N. W. 812; *Standard Mercantile Co.* v. *Ellis,* 48 W. Va. 309, 37 S. E. 593; *Smith* v. *Gott,* 51 W. Va. 141, 41 S. E. 175.

In *Chadbourn* v. *Williams, supra,* it is said, that "if Chadbourn had in any way, from any person or source, obtained such kuowledge or information as to the actual ownership of this property as would have operated on the mind of a man of ordinary business prudence as to lead him to think it might belong to Mrs. Williams and to put him on inquiry as to that fact before crediting her husband on the strength of it, and he failed to make any such inquiry, then he is in no position to invoke an estoppel against her."

[3] So then under the facts of this case, as found by the trial court, it is evident that the complainant had definite and specific notice of Mrs. Lester's equitable title to all of the property involved, and hence he cannot maintain his claim that it was conveyed in fraud of his rights. *Bank of Alexandria* v. *Patton,* 1 Rob. (40 Va.) 570; *Trimble* v. *State,* 145 Ind. 154, 44 N. E. 260, 57 Am. St. Rep. 175, note; *Kemp* v. *Folson,* 14 Wash. 16, 43 Pac. 1100.

Another assignment of error is that notwithstanding the adverse decision of the court as to the alleged voluntary and fraudulent conveyance to Nancy J. Lester, the court should have administered complete relief and given the complainant judgment for his debt. The determination of this question depends upon the proper construction of section 2460 of the Code. As the law was before that statute, a creditor could not attack a conveyance for fraud without first obtaining a judgment or decree against his debtor. This statute, which originated in the Code of 1849, changed this and authorized a creditor at large to

institute such a suit without first obtaining judgment. *Wallace* v. *Treakle*, 27 Gratt. (68 Va.) 479.

In *Davis* v. *Bonney*, 89 Va. 755, 17 S. E. 229, it was held that where a conveyance had been set aside for fraud and the proceeds of the property were insufficient to satisfy the complainant's demand in full, no personal decree or judgment could be given against the debtor for the residue of the debt, but the creditor must bring his action at law for a judgment thereon. The statute has since been amended (Acts 1893-4, p. 614), and now provides that, "in any such case, if the gift, deed, assignment, transfer, or charge be declared void, the court may make a decree against the debtor in favor of the creditor, whose claim shall have been proved in the suit, for the amount of such claim or for the balance due thereon after applying thereto the share of the proceeds of the sale of the estate to which such creditor may be entitled."

[4] It is claimed by the complainant that under the established doctrine, that when a court of equity has once acquired jurisdiction of the parties and subject matter it will afford complete relief, the court erred in refusing to enter a personal decree against the defendants for the amount of the debts which he claims he has proved.

While there can be no doubt that this is an accepted equitable doctrine, it cannot be applied to cases like this, because the complainant's rights in a court of equity do not rest upon general equitable doctrines. The right is created and the jurisdiction exists only because the statute (Code, sec. 2460) 'gives it. The legislature, in conferring the right on a creditor to go into equity for the purpose of setting aside a fraudulent conveyance before obtaining judgment for his debt, had the power to limit the juris-diction of the court, and has, in the clause of the statute above quoted, by clear implication, imposed a limitation.

In such cases, if the cerditor fails to establish his right to set aside a conveyance alleged to be voluntary and fraudulent, and there is a decree against him on this point, the court has no further jurisdiction over the parties, and this because the legislature has, in section 2460, withheld that jurisdiction. It may be that it would be wise for the legislature to amend this statute in the interest of economy, simplicity and to avoid a multiplicity of suits, but this court is powerless to extend the statutory jurisdiction which the legislature has seen fit thus to limit.

The case of *Walters* v. *Farmers Bank of Virginia,* 76 Va. 17, which is relied upon for the contrary view, was decided long before the statutory limitation was imposed, and hence the relief there granted is no longer permissible in such cases.

*Affirmed.*