Richmond.

J. W. CHESHIRE, ET ALS. V. G. A. GILES, ET ALS.

March 18, 1926.

Absent, West, J.

1. RELIGIOUS SOCIETIES—*Division in Congregation—Property Rights—Demurrer to Bill—Case at Bar.*—The instant case was a suit in equity, instituted by complainants claiming as trustees of a church, against the only surviving original trustee named in the deed conveying the property and others. The bill alleged that a division had occurred in the congregation and that complainants were contending for the true doctrines of the church while defendants denied these doctrines. Complainants alleged that they were the rightful owners of the church property and prayed that they should be so declared by the court. There was a demurrer to the bill.

   *Held:* That the demurrer was properly overruled because in substance the bill charged a diversion of the trust property.

2. RELIGIOUS SOCIETIES—*Division in Church—Property Rights.*—The instant suit was a bill by a minority faction in a church against the majority faction, to recover possession of the church property. Each congregation of the church was an independent body subject to no higher ecclesiastical authority. The minority faction was sustained by a number of associations of the church excluding the majority faction and their parson from fellowship and recognizing the minority as worthy of continued association and fellowship.

   *Held:* That as each congregation was independent, the decree of the trial court in favor of complainants, the minority faction, and that the majority must surrender the property, was error.

3. RELIGIOUS SOCIETIES—*Section Forty of the Code of 1919—Division of Church Property.*—Where no breach of trust or diversion of church property on the part of the majority faction of a church is shown, section forty of the Code of 1919 providing that in case of division in an independent church, a majority of the members of such congregation shall decide the right, title and control of the property of the congregation, governs the instant case, a proceeding between contending factions of a Primitive Baptist Church.

4. RELIGIOUS SOCIETIES—*Division in Independent Church—Limitation on Rights of Majority.*—If a trust is confided to a religious congregation of the independent or congregational form of church government,

it is not in the power of the majority of that congregation, however preponderant, by reason of a change of views on religious subjects, to carry the property so confided to them to the support of new and conflicting doctrines.

5. RELIGIOUS SOCIETIES—*Division in Independent Congregation—Burden of Proof.*—In a suit between contending factions of an independent congregation, a Primitive Baptist Church, where nothing has been done or said by the majority faction which could by any fair construction be held to indicate any substantial change in their views as to the fundamentals of the Primitive Baptist doctrine and faith, the burden of proof is upon the minority faction, the complainants, to show such change. The distribution of the property is controlled by section forty of the Code of 1919.

6. APPEAL AND ERROR—*Religious Societies—Contest Between Factions of a Church—Remand for Attempts of Reconciliation.*—The instant suit was between two contending factions in an independent church, and as under section forty of the Code of 1919, the majority faction was entitled to the control and disposition of the church property, this conclusion logically would lead to a reversal of the decree in favor of the minority and a dismission of the bill. Inasmuch, however, as the minority faction has been recognized by the association of churches of the denomination which possibly entitles them to be further heard, and as there is nothing in the record from which it could be concluded that a reconciliation in whole or in part of some of these unhappy differences is impossible, the Supreme Court of Appeals reversed the decree but remanded the cause for further proceedings, this course being in accordance with the rule that when a court of equity has once acquired jurisdiction it may proceed to a complete adjudication.

Appeal from a decree of the Circuit Court of Henry county. Decree for complainants. Defendants appeal.

*Reversed and remanded.*

The opinion states the case.

*Gravely & Carter* and *John R. Smith,* for the appellants.

*Taylor & Broaddus* and *Hooker & Sanford,* for the appellees.

PRENTIS, P., delivered the opinion of the court.

This is an unfortunate controversy between the members, or former members, of the Martinsville Primitive Baptist Church as to the ownership of the church building. Those who profess faith in a common Lord and Master have for slight reasons prolonged an unfortunate controversy, instead of waiving their relatively inconsequential differences of opinion, and agreeing to live in peace as brethren.

This, a suit in equity, was instituted by G. A. Giles, J. W. Shumate and J. B. Wade, claiming as trustees of the Primitive Baptist Church of Martinsville, for themselves and all other members of that church of like faith and order (who will hereinafter be called the Giles or minority faction) against John W. Cheshire and others (who will be called the Cheshire or majority faction). Cheshire is the only surviving original trustee named in the deed conveying the property. The deed recites that the property is conveyed to the trustees of the Primitive Baptist Church of Martinsville, and their successors forever.

The bill alleges that a contention and division has occurred in the congregation, primarily over points of doctrine and articles of faith, and secondarily over its rules of practice and government, and the complainants allege that they, together with many other members of the congregation, are contending for what they consider the true rules of government and the true doctrines of faith of the Primitive Baptist Church, while the other faction denies these doctrines of faith and rules of government.

The specification of this general averment is that on September 3, 1923, the Cheshire faction elected a moderator, and seated in its councils, and authorized to preach to its congregation, the Rev. J. R. Wilson, who a short time before had been excluded from

membership in the Primitive Baptist Church because
of his departure from the true doctrines, faith, practice
and rules of government of a Primitive Baptist Church,
and because of his contemptuous conduct towards
those in the church who opposed him. They then allege
that by implied, if not express, agreement, the dif-
ferences between these two factions were submitted to
the Pigg River Association, and that this association
reported in favor of the Giles, or minority, faction;
that the Cheshire faction has the keys to the church
building and exclusive possession of it; and they pray
thus:

"Your complainants are advised that the test of
true membership of any church is the acceptance of
its faith and conformity to its rules of government;
that the aid of a court of equity cannot be invoked to
decide exclusive ecclesiastical questions of doctrine,
faith, practice and rules of government. And they are
advised further that if said church property was con-
veyed in trust for the use and benefit of the Primitive
Baptist Church of Martinsville, and that if they and
all other members of like faith and order are recognized
and declared by the proper ecclesiastical authority
as being the orderly Primitive Baptist Church of
Martinsville, which your complainants reiterate that
said district association is the recognized authority
to decide such questions, then your complainants are
the rightful owners of said property, and it should be
so declared by this honorable court."

[1] There was a demurrer to the bill, which we think
was properly overruled, because in substance it charges
a diversion of the trust property. *Wade* v. *Hancock*,
76 Va. 627.

[2] The evidence fails to support many of the in-
timations and allegations of the bill. For instance,

there is little as to the differences between the two
factions over points of doctrine and articles of faith,
and that little is difficult to comprehend. The real
controversy grows out of the fact that Wilson, who was
already the moderator or pastor of the Martinsville
church, had been excluded from membership in his
own church at Danville, and after Wilson's explana-
tion before the Martinsville church the majority per-
mitted him to preach to them and continue as their
pastor. It is abundantly shown in the record that each
congregation in this denomination is independent and
has absolute control over its property and internal
affairs. Each congregation is an independent sovereign
body, subject to no higher ecclesiastical authority, and
each is the final judge of the true faith, doctrine and
practice of the church. Primitive Baptist associations,
on the other hand, are mere voluntary associations of a
number of churches for the purpose of worship and
consultation through delegates to the association,
and have no power as to differences between members
of the individual congregations, except to advise. This
independence is thus expressed in Hassell's History,
at page 292: "Especially does the language of Christ
in Matthew 18th, 15-18, demonstrate that the church
is the highest and the last ecclesiastical authority on
earth; that there can be no appeal, under the law of
Christ, from the decision of the church to a presbytery,
or a synod, or general assembly, or conference, or
convention, or priesthood, or prelacy, or papacy, or
association, or any other earthly authority."

This independence and the relation of each indepen-
dent church to that association is thus expressed by
Rev. Randolph Perdue, moderator of the Pigg River
Association: "A Primitive Baptist Association is an
agreement of churches coming together in unity of

faith and doctrine for mutual spiritual benefit and is composed of two or more churches becoming a body as an individual church would become a body of individual members, and are governed and ruled as an individual church. Each church is a sovereign body so long as it remains outside of the association; but when it becomes a part of the association it must live and act in such a way that the association will carry it as one of her members. If it does not comply with what the association considers to be its duty in connection with the association, the association has no authority over it except to advise, and if, after being advised, she fails to act on such advice, the association has the right to drop her from the list and decline fellowship with her. If a part of such church wishes to do as advised by the association, and wishes to remain, the association has the right, according to our customs, to receive such part of that church into their fellowship and recognize it as the church of that place and a part of that association."

The substance of these statements as to the independence of each congregation has been variously stated, and it may be generally said that they do not differ materially. This Pigg River Association with which this congregation was affiliated thus expresses the rule: "That the church of Christ is a body corporate, possessed of full power to govern herself, her only rule being the written word of God. She is therefore independent."

It appears that a number of other associations also condemned Wilson; held that those who supported him were in disorder, and advised that Primitive Baptists ought to withdraw from fellowship with him. The practically unanimous pronouncements of these various associations, excluding Wilson and the majority from

fellowship, and in recognizing the minority as worthy of continued association and fellowship, is impressive. Influenced doubtless by these condemnations, the learned judge of the trial court decreed in favor of the complainants, the minority faction in the Martinsville church, and held that the majority must surrender the property. It is from this decree that this appeal has been taken.

Conceding the independence of the Martinsville congregation (church) under circumstances like those here shown, as we certainly must, it seems to us that the decree is clearly erroneous. It is not shown that there has been any breach of trust or diversion of the property on the part of the Cheshire or majority faction, nor that they have abjured or renounced their ancient faith. It is only shown that they have continued as their pastor one who has been excluded from membership in another independent church, that the Pigg River Association has condemned this action as improper and recognized the minority faction as the true Primitive Baptist Church at Martinsville. Now as to this, each faction and the Association are clearly within their rights, but nevertheless it does not follow, because the minority are so held to be the true Primitive Baptists at Martinsville, in the opinion of the association, that this minority is entitled to take the church property away from the majority who refuse to accept the advisory counsel of the association.

[3] It seems to us clear that Code, section 40, was enacted to determine just such a controversy. After providing for the division of the church property generally as affecting other denominations, in the last clause, it refers specifically to such divisions between congregations independently organized, as the Primitive Baptist churches are. This is the language: "If a

division has heretofore occurred, or shall hereafter occur in a congregation which in its organization and government is a church or society entirely independent of any other church or general society, a majority of the members of such congregation, entitled to vote by its constitution as existing at the time of the division, or where it has no written constitution, entitled to vote by its ordinary practice or custom, may decide the right, title and control of all property for such congregation. Their decision shall be reported to such court, and if approved by it, shall be so entered as aforesaid, and shall be final as to such right of property so held." This statute makes it unnecessary either to review or to cite the numerous cases in which similar controversies have been determined. There is an elaborate note on the subject in 24 L. R. A. (N. S.) 692.

[4] The limitations upon the power of a majority in such cases is thus sufficiently expressed by the Supreme Court of the United States in *Watson* v. *Jones*, 13 Wall. 679, 20 L. Ed. 675: "If the trust is confided to a religious congregation of the independent or congregational form of church government, it is not in the power of the majority of that congregation, however preponderant, by reason of a change of views on religious subjects, to carry the property so confided to them, to the support of new and conflicting doctrines." *Morris St. Baptist Church* v. *Dart*, 67 S. C. 338, 45 S. E. 753, 100 Am. St. Rep. 727.

The same principle is recognized in *Brooke* v. *Shacklett*, 13 Gratt. (54 Va.) 301; *Hoskinson* v. *Pusey*, 32 Gratt. (73 Va.) 428; and in *Finley* v. *Brent*, 87 Va. 103, 12 S. E. 228, 11 L. R. A. 214, 34 Cyc. 1167.

[5] As we have seen, however, nothing has been done or said by the majority of the Martinsville con-

gregation which could, by any fair construction, be held to indicate any substantial change in their views as to the fundamentals of Primitive Baptist doctrine and faith. Without such a change, and the burden is upon the complainants to show this, Code, section 40, as we have concluded, controls the disposition of the property.

[6] This conclusion logically would lead to a reversal of the decree and a dismission of the bill. Inasmuch, however, as the minority faction has been recognized by the association, which possibly entitles them to be further heard, and as there is nothing in the record from which it could be concluded that a reconciliation in whole or in part of some of these unhappy differences is impossible, we have determined to reverse the decree, but we will remand the cause for further proceedings.

That this course is in accordance with the precedents and with the rule that when a court of equity has once acquired jurisdiction of a cause upon equitable grounds it may proceed to a complete adjudication, even to the extent of establishing legal rights and granting legal remedies, which would otherwise be beyond the scope of its authority, is easily demonstrable. *Walters* v. *Bank*, 76 Va. 18; *Dunn* v. *Stowers*, 104 Va. 301, 51 S. E. 366; *Turk* v. *Ritchie*, 104 Va. 595, 52 S. E. 339; *Johnson* v. *Dunn*, 108 Va. 493, 62 S. B. 341, 19 L. R. A. [N. S.] 1064; and there are several other Virginia cases which repeat this rule. *Wood* v. *Lester*, 126 Va. 169, 101 S. E. 52, recognizes the rule but notes a statutory qualification of it which is inapplicable here.

If it shall appear to the Circuit Court of Henry county that there is no possibility of such a reconciliation, then it should allow the complainant, upon whom the burden of proof rests, to proceed, under the super-

vision of the court in this cause, under Code, section 40, to ascertain definitely which of these factions constituted a majority of the congregation, as it existed when the division occurred. The church property belongs to such majority. When and after this necessary fact has been so judicially determined, a decree making this determination effective should be entered. If the complainants decline so to proceed, their bill should be dismissed.

*Reversed and remanded.*