## Richmond

### BILLY T. BABER, CHAIRMAN, ETC., ET AL. v. M. BOYD CALDWELL, ET AL.

January 16, 1967.

Record No. 6153.

Present, All the Justices.

*Robert S. Irons* (*Hale Collins,* on brief), for the appellants.

*George W. Draper* (*Dillow and Andrews,* on brief), for the appellees.

GORDON, J., delivered the opinion of the court.

Intra-congregational strife in the Level Green Christian Church incited this litigation. The complainants, representing a majority of the congregation, brought suit to establish their right to control the activities of the Church and the use of its property. The trial Court denied the complainants any relief, however, and upheld the right of the minority group to control the Church activities and property as prayed in its cross-bill.

Virginia law recognizes the right of a majority of the members of a divided congregation to control the use of the church property if the church, in its organization and government, is a church or society entirely independent of any other church or general society. Code § 57-9.[1] But the majority cannot, by reason of a change of views on

(1) "§ 57-9. *How property rights determined on division of church or society.*— If a division has heretofore occurred or shall hereafter occur in a church or religious society, to which any such congregation is attached, the communicants, pew holders, and pew owners of such congregation, over twenty-one years of age, may, by vote of a majority of the whole number, determine to which branch of the church or society such congregation shall thereafter belong. Such determination shall be reported to the circuit court of the county, or circuit or corporation court of the city, wherein the property held in trust for such congregation or the greater part thereof is; and if the determination be approved by the court, it shall be so entered in its chancery order book, and shall be conclusive as to the title to and control of any property held in trust for such congregation, and be respected and enforced accordingly in all of the courts of this State. *If a division has heretofore occurred or shall hereafter occur in a congregation, which in its organization and government is a church or society entirely independent of any other church or general society, a majority of the members of such congregation, entitled to vote by its constitution as existing at the time of the division, or where it has no written constitution, entitled to vote by its ordinary practice of custom, may decide the right, title and control of all property held in trust for such congregation.* Their decision shall be reported to such court, and if approved by it, shall be so entered as aforesaid, and shall be final as to such right of property so held." [Emphasis supplied] Va. Code Ann. § 57-9 (Repl. vol. 1959).

religious subjects, divert the use of the property " 'to the support of new and conflicting doctrines' ". *Cheshire v. Giles*, 144 Va. 253, 260, 132 S.E. 479, 481 (1926).

The trial Court found that the Level Green Christian Church was not such an independent church. It also found in effect that the majority group had "breached the trust" on which the Church property was held "by diverting the property of the Church to their own use to the support of doctrines radically and fundamentally opposed to" the doctrines formerly adhered to by the Church. Our decision on appeal depends upon whether the evidence supported these findings.[2]

The Church now known as the "Level Green Christian Church" was established in the nineteenth century as "The Church of Christ, Worshipping at Level Green, Craig County, Virginia". The present dissension between the majority and minority groups of the Church erupted after Jack Harris became pastor in March 1963. At that time Christian churches and their ministers were divided into two camps, the Disciples and the Independents. Mr. Harris, whom a majority of the congregation supported, was an Independent.[3]

In September 1963, members of the minority group of the Church invited a Disciples minister, Jack Hamilton, to conduct an "evangelistic campaign" at the church beginning September 29. Mr. Hamilton knew the Board of Elders and Deacons of the Church had passed a resolution requiring Board approval before any person could preach in the church. He knew also that the Board had not given its approval to his preaching in the church. Nevertheless, he appeared at the church on the evening of September 29 to begin the evangelistic campaign. He did not conduct the campaign, however, because the church doors and windows had been closed and locked.

In the meantime, at a meeting of the congregation of the Church on September 15, 1963, the members voted to sustain the resolution of the Board requiring its approval before any minister could preach

---

(2) Judge Earl L. Abbott heard the evidence *ore tenus*, but disqualified himself before rendering a decision. Judge Paul A. Holstein, who was designated to sit in Judge Abbott's place, decided the case on the transcript of the evidence adduced before Judge Abbott. Conflicts in the testimony present no problem in our statement of the facts because the relevant testimony is not in conflict.

(3) The Disciples usually refer to the members of the opposite camp as Independents, and we have adopted that designation for convenience. The "Independents" apparently dislike the designation. Mr. Harris said of his camp: "I know of no group that's claiming to be known as independents. I know of a group that is calling themselves Christians, members of the Christian Church."

in the church. Members of the minority group who attended the meeting did not vote, so the resolution was passed unanimously.[4]

This suit was instituted in October 1963. In their bill of complaint (as amended and supplemented) the Chairman of the Board of Elders and Deacons and the Trustees of the Church prayed that the defendants (the minority group) be enjoined "from further interfering with or disrupting the orderly and proper conduct and operation of said Level Green Christian Church, or interfering with its duly appointed minister in the performance of his duties, and from holding or attempting to hold any religious services in said Church contrary to the wishes and direction of the majority of the congregation of said Church and its Board of Elders and Deacons, and . . . [for] such other, further and general relief in the premises as the nature of their case may require, or in equity shall seem meet." The defendants filed a cross-bill in which they asserted their right to use "said church as a place of worship for the congregation of the Level Green Christian Church (Disciples of Christ)"[5] and prayed for an injunction against interference by the complainants.

All witnesses agreed that the congregation of each Christian church is autonomous, whether the church be designated "Christian" or "Christian (Disciples of Christ)" or "Church of Christ (Christian)". No super-congregational body controls the action of any Christian church.[6]

H. Myron Kauffman, Executive Secretary of the Virginia Christian Missionary Society, was the key witness for the minority group. He said the Disciples "became in effect a separate movement" in 1955. Mr. Kauffman admitted there was no difference in the fundamental doctrine and faith of the Disciples and the Independents. Explaining the differences between the two groups, he said: "In so far as Biblical doctrine is concerned on teachings from the Bible there would be no difference. In so far as doctrinal practices so far as the church government or policy is concerned there is a difference in the point

---

(4) The congregation also voted unanimously to sever all relationship with the Virginia Christian Missionary Society and to petition the court for correction of a deed dated December 1, 1910. The Society and the 1910 deed will be referred to later.

(5) Disciples churches, unlike Independent churches, often include "(Disciples of Christ)" in the church names. The evidence does not indicate that the Level Green Christian Church ever included "Disciples of Christ" in its name.

(6) Congregational autonomy was a major tenet of the founders of the Christian Church, Barton W. Stone and Alexander Campbell. See *Martin* v. *Ky. Christian Conference, Inc.*, 255 Ky. 322, 73 S.W.2d 849 (1934).

of cooperation. There is a difference as to support of missions through societies. There is a difference as to the central teaching of our people at the basic point of Christian unity. The Disciples of Christ believe in Christian unity and have always preached it."

The Level Green Christian Church severed all relationship with the Virginia Christian Missionary Society shortly after the congregational meeting on September 15, 1963. (See footnote (4).)

Mr. Kauffman described the Virginia Christian Missionary Society as "a creature of the churches". He explained "We [the Society] did not create the church but we were created by the churches, therefore, we answer to the churches in annual assembly". Mr. Kauffman apparently referred to the annual assembly called the Alleghany District Convention (Disciples of Christ). Disciples churches in Virginia support the Virginia Christian Missionary Society and send delegates to the Alleghany District Convention. However, each congregation's support of the Society is voluntary, and no congregation is bound by resolutions passed at the Convention.

We hold that the Level Green Christian Church is entirely independent of any other church or general society within the meaning of Code § 57-9 (see footnote (1)). The first sentence of the section relates to churches, such as Episcopal and Presbyterian churches, that are subject to control by super-congregational bodies. The Level Green Christian Church is excluded from this category because it is autonomous. The third sentence of the section relates to the other category, autonomous or entirely independent churches. The Level Green Christian Church falls in that category, as did the Primitive Baptist Church of Martinsville which was the subject of *Cheshire* v. *Giles, supra*, 144 Va. 253, 132 S.E. 479 (1926).

It may be true, as the minority group insists, that before 1963 the Level Green Christian Church was interrelated with Disciples churches through its membership in the Virginia Christian Missionary Society and the Alleghany District Convention. But interrelation or (as Mr. Kauffman described it) "cooperation" does not destroy or even impair independence. *Cheshire* v. *Giles, supra*. A majority of the congregation always had the right to withdraw the Level Green Christian Church from the Society and the Convention.

■ Furthermore, the uncontradicted evidence shows that there has been no change in the religious doctrine and faith of the Level Green Christian Church. *Stansberry* v. *McCarty*, 238 Ind. 338, 349, 149 N.E.2d 683, 688 (1958); *Wright* v. *Smith*, 4 Ill. App. 2d 470,

476, 124 N.E.2d 363, 366 (1955); *Ragsdall* v. *Church of Christ,* 244 Iowa 474, 482, 55 N.W.2d 539, 543 (1952). The shift from a Disciples church to an Independent church, if it occurred, worked no such change. The majority group therefore has not diverted the use of the Church property to the support of new religious doctrines that conflict with those previously adhered to by the Church. See *Cheshire* v. *Giles, supra.*

■ All lands now owned by the Level Green Christian Church were conveyed to the Trustees of the Church, except a one-half interest in a ⅜ acre tract that was conveyed under a deed dated December 1, 1910. In 1910 the Level Green Christian Church and the Level Green Methodist Church conducted their services in the same sanctuary, located on the ⅜ acre tract. Under the 1910 deed the ⅜ acre tract was conveyed to Trustees "to be held . . . in trust for the aforesaid Methodist Episcopal Church South and the Disciples or Christian Church in equal proportions, that is to say, that each of the said churches or denominations shall have a like or equal interest therein, as a place of divine worship for the use and membership of the said two churches or denominations, subject to the organic law, rules, usages and ministerial appointments of the said two churches or denominations respectively." [7]

The minority group contends that the 1910 conveyance to "the Disciples or Christian Church" impressed a trust for the benefit of a Disciples church, from which a majority of the congregation defected in 1963. We disagree. As shown by the evidence, Christian churches were sometimes referred to as Disciples of Christ churches before the Christian church separated into Disciples churches and Independent churches.

As admitted by Mr. Kauffman, the Disciples did not become a separate movement until 1955. We find no basis for interpreting the words "Disciples or Christian Church" as creating a trust for the benefit of a Disciples church in the modern sense. In our opinion, those words were intended to identify one of the grantees as the

---

(7) Following the provisions of the 1910 deed quoted in the text, this sentence appears: "But it is provided that the said church building or Church edifice with its appurtenances shall be free to the use of and for the benefit of other orthodox Christian denominations when not in use by the said Methodist Episcopal Church South and the Disciples or Christian Church." The words of this sentence "other orthodox Christian denominations" refer to denominations other than the Methodist Church and the Disciples or Christian Church, e.g., Presbyterian. The sentence does not contemplate that opposing factions of a divided congregation should use the property jointly.

Level Green Christian Church, rather than to commit the Level Green Christian Church to the separate movement now known as the Disciples.[8] Accordingly, we hold that title to this one-half interest is vested in the Trustees of the Level Green Christian Church.[9] Va. Code Ann. § 57-8 (Supp. 1966).

We reverse the decree and dissolve the injunction entered by the Circuit Court of Craig County. Following the precedent of *Cheshire v. Giles, supra*, we remand the case for further proceedings.

If the defendants so request, the Circuit Court will direct the holding of a congregational meeting for the purposes of electing or reelecting Elders and Deacons and ratifying or repudiating the congregation's previous decision to sever all relationship with the Virginia Christian Missionary Society. The Court, upon being satisfied that the meeting was duly called and held, will approve the resolutions adopted by a majority of the members of the congregation who were present at the meeting and entitled to vote as provided in Code § 57-9 and, if requested by the majority, will enter an injunction as prayed in the bill or cross-bill.

If the defendants do not make timely request for the holding of a meeting, the Circuit Court will enter an injunction as prayed in the bill of complaint and will dismiss the cross-bill.

*Reversed and remanded.*

---

(8) The Trustees of the Level Green Methodist Church interpreted the intent of the 1910 deed as we have interpreted it. By subsequent deed the Trustees of that Church conveyed its one-half interest in the ⅜ acre tract to the Trustees of the Level Green Christian Church.

(9) As mentioned in footnote (4), the congregation of the Church voted at the September 1963 meeting to petition the court for correction of the 1910 deed. More specifically, the congregation voted to ask the court to change the name of the grantee to the "Trustees of the Level Green Christian Church". No such prayer was set forth in the bill or the amended and supplemented bill, unless the prayer for other general equitable relief may be deemed to include a prayer for correction of the deed. We need not decide this procedural question, which was not raised by any party. Our holding set forth in the text is necessary for the disposition of the issues raised in the trial Court and here. If (as contended by the defendants-appellees) the Church owns a one-half interest ·in the property on which the sanctuary is located upon a trust to use the property for the benefit of a Disciples church (in the modern sense), we could not authorize the entry of the injunction asked for by the majority group.