Charles H. Chadbourn *vs.* Maria H. Williams and Husband.

January 23, 1891.

**Fraudulent Conveyance—Husband and Wife—Conveyance Sustained.**
Action by a judgment creditor of the husband to set aside a conveyance of real estate from the husband, through an intermediary, to the wife, on the ground that it was executed with intent to hinder, delay, and defraud the creditors of the husband. *Held*, that the evidence justified a finding that, although the title was in the husband, it was in fact the wife's property, purchased and paid for with her money, which she had intrusted to her husband, to be used and invested by him as her agent for her benefit,

and that the conveyance was made, without any fraudulent intent, in order to vest the legal title in the wife, to whom the property equitably belonged.

**Wife's Money Received by Husband—Presumption.**—Under the "married woman's act" there can be no presumption that a husband, when he receives the money of his wife, takes it, by virtue of his marital power, as his own; nor is there any presumption, in the absence of evidence of the fact, that the wife, when she places her money in the hands of her husband, thereby intends to make a gift of it to him.

**Wife's Land in Name of Husband—Wife not Estopped as to Creditor with Notice.**—The wife was not estopped to claim that the property was in fact hers, if the creditor, when he gave the credit to the husband, had such notice or information as to the actual ownership of the property as would have put a man of ordinary business prudence upon inquiry as to the fact before giving credit to the husband.

Plaintiff, having recovered judgment of $7,428.55 against the defendant James M. Williams, on which execution had been returned wholly unsatisfied, brought this action in the district court for Olmsted county to set aside as fraudulent certain conveyances by which the title to real property had been transferred from the judgment debtor to his wife and codefendant. The plaintiff appeals from an order refusing a new trial after a trial before *Start,* J., and judgment ordered for defendants.

*Burt W. Eaton* and *Davis, Kellogg & Severance,* for appellant.

*Chas. C. Willson,* for respondents.

Mitchell, J. The plaintiff, a judgment creditor of the defendant James M., brought this action to set aside a conveyance of real estate made by the judgment debtor to his wife and codefendant, Maria H. The allegations of the plaintiff are that, in 1875, he and James M. became co-guarantors of the payment of certain promissory notes of a corporation of which both were stockholders; that, the principal having failed to pay the notes, he was compelled to pay the whole of them, in 1884; and that he afterwards brought suit against James M. for contribution, and obtained judgment against him, in 1888, on which execution has been issued and returned unsatisfied. He further alleges that, at the time he united with James M. in this contract of guaranty, the latter was, and for a long time prior thereto

had been, the owner and in possession of the real estate in question, and had held himself out to the world as such, and had thereby obtained good credit in the community where he lived; that on account of the possession and ownership of said property and such credit, and not otherwise, the plaintiff joined with said James M. in the contract of guaranty referred to; that in August, 1883, the defendants, with intent to hinder, delay, and defraud the creditors of James M., and without consideration, conveyed the property to one Dorr, who, in pursuance of and with the like fraudulent intent, and without consideration, conveyed it to the defendant Maria H. Defendants, in their answer, deny that the property ever in fact belonged to James M., but allege that it always belonged to Maria H., and was purchased and paid for with her own money; that James M. held the title in his name merely as agent and trustee for her, to manage and sell for her benefit; and that the conveyances referred to were made at her request and in good faith, for the purpose of vesting the legal title in her, to whom the property in fact and equitably belonged.

The court found, in substance, that all these allegations of the answer were true; and, after a careful examination of the record, we are satisfied that the findings are supported by the evidence. The testimony was certainly plenary that all of this property had been purchased and paid for with the money of Maria H., received by her from her father and mother, (or, by reinvestment, with the proceeds of such money,) and which she had intrusted to, and placed in the hands of, her husband. And there was certainly no evidence that compelled the conclusion that Mrs. Williams intended to bestow this money on her husband as a gift. Since the enactment of the "married woman's act," which places a *feme covert*, as to rights of property, on practically the same footing as a *feme sole*, there can be no presumption that a husband, when he receives the money of his wife, takes it by virtue of his marital power as his own. In fact, the presumption is right the opposite,—that he received it for his wife. Neither is there any presumption, in the absence of direct evidence of the fact, that, when a wife places her money in the hands of her husband, she intended it as a gift to him, any more than a gift would be

inferred from a third person who, in like manner, deposits money with him. Whenever a husband acquires possession of the separate property of the wife, with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of evidence that she intended it as a gift to him. After it is once shown that property accrued to the wife by descent or otherwise, the presumption is that it continues hers until the contrary appears, and the burden is upon him who asserts it to be the property of the husband to prove the transmission of title to him by gift, or contract for value. And, while business transactions between husband and wife are to be scanned closely where the husband is insolvent, yet, in a controversy between her and her husband's creditors as to whether a right of property is in the husband or the wife, it should, in the present state of the law, be determined upon the fair preponderance of evidence as in other cases. *Laib* v. *Brandenburg*, 34 Minn. 367, (25 N. W. Rep. 803;) *Bergey's Appeal*, 60 Pa. St. 408; *Stickney* v. *Stickney*, 131 U. S. 227, 238, (9 Sup. Ct. Rep. 677.)

Hence, if the plaintiff has any standing whatever in this case, it must be upon principles of equitable estoppel, to wit, that the defendant Maria H. having allowed the title of this property to stand in the name of her husband, and permitted him to hold himself out to the world as the owner of it, and acquire credit on the strength of it, and the plaintiff having given him credit on the faith of his supposed ownership of it, it would be a fraud on him for her to now allege that it was hers. It was with reference to this feature of the case that the trial court made its eleventh, twelfth, and fifteenth findings. Of course it is essential, in order that plaintiff may invoke this estoppel against Mrs. Williams, that he should have given this credit to her husband upon the faith of, and in the reasonable and justifiable belief in, the fact that the husband was the actual owner of this property, and without notice of the fact that it was his wife's, although in his name. The findings referred to are in part rather of the evidentiary than the ultimate facts, but we think that they are, in substance, to the effect that plaintiff, when he joined with Williams in this contract of guaranty, possessed such information or notice that the property standing in his name was, or at least might be, his wife's, as would

have put a man of ordinary prudence upon inquiry before giving Williams the credit which he did.    The testimony of the witnesses Stone and Ellison, upon which the learned judge in his memorandum says his findings are largely based, and which he evidently accepted as true, would have justified a finding even stronger that this.    Counsel, in support of his contention that the evidence of Stone and Ellison was insufficient to charge plaintiff with notice, invokes the rule, sometimes applied, that where actual notice is relied on, in order to be binding, it must come from some person interested in the property to be affected by it, and must be given and received in the course of the very transaction itself concerning the property in which the parties are then engaged.    If the evidence had consisted of statements made by the witnesses to plaintiff, the rule might have had some application.    But the evidence given consisted of statements made by plaintiff himself, tending to show existing knowledge on his part that the property standing in Williams's name in fact belonged to his wife. If Chadbourn had in any way, from any person or source, obtained such knowledge or information as to the actual ownership of this property as would have so operated on the mind of a man of ordinary business prudence as to lead him to think it might belong to Mrs. Williams, and to put him on inquiry as to that fact before crediting her husband on the strength of it, and he failed to make any such inquiry, then he is in no position to invoke an estoppel against her. And such we think is the substance and effect of the court's findings.

The point is made that the trial judge, instead of coming to his own conclusion as to the facts, submitted the case for decision to another judge, who had not tried the case.    The record does not bear out this claim.    It shows that the findings are conclusions arrived at by the trial judge on his own judgment previously formed, but fortified by that of a brother judge, to whom he submitted the record of the entire evidence before filing his decision.

Order affirmed.