FREDERIC E. WATSON, Administrator, *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

June 11, 1891.

**Town Plat—Donation to Railway Company.**—On the town plat of the town of Wells was left, undivided into lots, a strip of land on which were the words, "Reserved for right of way, Line of S. M. R. R." *Held*, that this was not, under Gen. St. 1878, c. 29, § 5, a donation of the land to the railroad company.   Following *County of Hennepin* v. *Dayton*, 17 Minn. 237, (260.)

**Common-Law Dedication to Railway Company.**—A common-law dedication of land cannot be made to a railroad company for public use for railroad purposes.

**Deed—Action to Reform—Parties.**—A deed conveying real estate cannot be reformed in an action to which the owners are not parties.

**Oral Agreement to Convey Land — Requisites of Acts of Part-Performance.**—An oral agreement to convey real estate, where acts of part-performance are not done pursuant to and relying upon it, will not prevent a recovery of the real estate by the owner.

v.46M.—21

**Effect of Finding of "No Evidence."**—A finding that there was no evidence as to a particular issue is a finding against the party having the affirmative of the issue.

**Construction of Railway without Compensation—Ejectment by Land-Owner.**—An owner upon whose land a railroad company has, without making compensation or acquiring the right in any other way, constructed its railroad, and whether it did so with or without his acquiescence, and whether it did so before or after the passage of Gen. St. 1878, c. 34, § 33, may bring ejectment to recover the land.

**Same—Entry under License from Deceased Owner—Damages.**—Defendant entered upon land by license of the owner, which was revoked by his death, but defendant still retained the possession. *Held*, proper to allow as damages the mesne profits from the time of the death.

Plaintiff, as administrator of Clark W. Thompson, who died in 1885, brought this action in the district court for Faribault county, to recover possession of a strip of land in the village of Wells, 30 feet in width, and being the northerly part of a tract 130 feet wide occupied by defendant, the strip in question having a side track upon it. A jury was waived and the action tried by *Severance*, J., who found these facts: In 1869 Thompson, being owner of about 9,000 acres of land in Faribault county, and being president and general promoter of and a stockholder in the Southern Minnesota Railroad Co., and having in contemplation the laying-out and platting of a village on his land and establishing there a station and other conveniences for the railroad of his company, determined to donate and convey to the company a strip of land through all his lands in the county, including the village, sufficient for the right of way, structures and appliances of the railroad; and he then and there orally promised the company that he would do so upon the construction of the railroad through his lands. But it does not appear that the company constructed its railroad on the premises in question because of or relying on such promise. Afterwards and in the same year, 1869, the company, under Thompson's direction and controlled by him, located its railroad through his lands, and, among them, through a quarter-section which, in the same year, he laid

out and platted as the village of Wells, the plat being duly acknowl-edged and filed for record.   In making the plat he left a strip 130 feet wide, and marked as of that width on the plat, running from east to west through the village, open and unplatted into lots, blocks, streets, or alleys, upon which strip the line of the company, which had already been located, was plainly marked, the strip being 50 feet wide on the south side of such line and 80 feet wide on the north side.   In platting the village Thompson reserved this strip for the purpose of right of way for the railroad, and for depots, side tracks, and other necessary appliances, and placed upon the strip the fol-lowing: "Reserved for right of way, Line of S. M. R. R."   In 1869 and 1870, the company, under Thompson's personal supervision and direction as president and chief promoter, built its railroad through the village so platted and upon the line fixed and marked on the plat on the reserved strip, and built stations, etc.   On the north 30 feet of the strip (being the premises in question) a side track only was constructed.   Long before Thompson's death private warehouses were built in the village along the north side of the 130-foot strip and adjacent to the side track on the north 30 feet thereof, to be accommodated by such side track—all with Thompson's knowledge, consent and acquiescence from the time of their erection to the time of his death.   The company took full possession of the 130-foot strip in 1869, and it and its successors have held such possession thereof ever since, operating the railroad thereon, and all this by the procurement and with the consent of Thompson, to the time of his death.

In March, 1876, Thompson and his wife, to carry out his original determination and promise to give the company so much land as it should need for its right of way and structures through all his lands, conveyed to the Southern Minnesota Railroad Co. the south 100 feet of the 130-foot strip.   The conveyance was prepared by the general attorney of the company, and at the time of its execution he and Thompson supposed it embraced all of the strip in the village occu-pied by the company, and by their mistake and inadvertence the north 30 feet of the strip were omitted from the deed.

The convenience of the railroad and the public require for the purposes of the railroad the whole of the 130-foot strip. The defendant has succeeded to all the rights of the Southern Minnesota Railroad Co.

Upon these facts the court held that Thompson was owner in fee of the premises in question at the time of his death, and ordered judgment for plaintiff, which was entered, and the defendant appealed.

*Andrew C. Dunn,* for appellant.

*Eller & How,* for respondent.

GILFILLAN, C. J.    There are two principal questions in the case— *First.* Was there a statutory donation or grant of the land in controversy to the defendant by Clark W. Thompson, by means of the plat of the town of Wells?   *Second.* May a railroad corporation acquire an easement in lands by a common-law dedication of it to public use for railroad purposes?   For, if the second question be answered in the affirmative, there can be no doubt of the defendant's title, as the facts found are sufficient to establish a dedication.

The first of these questions is really covered by the decision in *County of Hennepin* v. *Dayton,* 17 Minn. 237, (260.)   The statute (Gen. St. 1878, c. 29, § 5) provides that, "when the plat is made out, certified, acknowledged, and recorded as required by this chapter, every donation or grant to the public, or any individual, religious society, or to any corporation or body politic, marked or noted as such on said plat, shall be deemed, in law and equity, a sufficient conveyance to vest the fee-simple of all such parcels of land as are therein expressed," etc.   Such a donation or grant must be evidenced wholly by the plat.   It cannot rest partly upon the plat and partly in parol, any more than can a conveyance by deed.   The intent to donate or grant must appear from the plat itself.   In the case referred to, there was, upon the plat of the town of Minneapolis, a block not divided into lots, on and across which were placed the words "County Block." The court held the intent to donate to the county not to be sufficiently indicated, and said of those words: "They might furnish ground for a conjecture that the proprietors had either given or

granted the block to Hennepin county, or that they had reserved it with the design of giving it or selling it to the county at some future time.     But there must be more than a *ground for any conjecture*, even if it were not in the alternative.     The donation or grant must be marked or noted as a donation or grant.     There must be some marking or note upon the plat, clearly expressing, in some way, that a designated piece of land is given or granted to a designated owner or grantee."     So in this case the words marked on the strip of which the land in controversy is a part, "Reserved for right of way, Line of S. M. R. R.," might furnish ground for conjecture that the owner had given, or intended in the future to give, the strip to the railroad company; but they do not clearly express that the land is thereby and then donated or granted to the company.     If we are to suppose that the owner used words in their legal sense, then the word "reserved" would express an intent on the part of the owner to hold the land to himself, rather than, at present, to part with it.     If he intended to withhold the land, it is immaterial, so far as a statutory donation or grant is concerned, what purpose he intended eventually to make of it.

It is remarkable that there are so few decisions touching in any way the capacity of a railroad company to receive a common-law dedication of land for the purpose of a railway.     The appellant refers us to 1 Rorer, Railroads, 322, where the author assumes that such dedication may be made, and to *Daniels* v. *Chicago & N. W. R. Co.*, 35 Iowa, 129; *Texas & New Orleans Ry. Co.* v. *Sutor*, 56 Tex. 496, (11 Am. & Eng. R. Cas. 506;) and *Morgan* v. *Railroad Co.*, 96 U. S. 716, —in which the same thing seems to have been assumed, though in none of them is there anything to indicate that the question was raised.     In *Todd* v. *Pittsburg, etc., R. Co.*, 19 Ohio St. 514, referred to by the respondent, the court held directly that a railroad company cannot acquire title to land by dedication.

The appellant argues that, whenever the right of eminent domain may be exercised to appropriate private property to public use, the property, or an easement in it, may pass by common-law dedication; and therefore, as lands for the use of a railroad company may be appropriated under the right of eminent domain, such a dedication may

be made to a railroad company. It is not true, however, that a public use which will justify taking private property under the right of eminent domain, will in all cases sustain a dedication to public use. Private property may, under the right of eminent domain, be appropriated for mill-dams,—*Miller* v. *Troost*, 14 Minn. 282, (365;) for the maintenance and operation of booms on rivers navigable for logs, (*Cotton* v. *Miss., etc., Boom Co.*, 22 Minn. 372;) for constructing water-works for a particular town, (*Inhabitants of Wayland* v. *County Comm'rs. of Middlesex*, 4 Gray, 500;) for a district school, (*Williams* v. *School-Dist.*, 33 Vt. 271; *Township Board* v. *Hackmann*, 48 Mo. 243;) and undoubtedly for many such purposes, as for fire-engine houses in cities and towns. But it would be extending the doctrine of dedication beyond anything yet suggested in the books to hold that the title or right to the property or easement could thereby pass to and vest in the owner of the dam or mill, the boom company, the town constructing the water-works or engine-house, or school-district erecting the school-house.

The rule that a right in the public to use the land of an individual may be vested by dedication, by acts *in pais*, when such a right can vest in an individual only by grant, is anomalous, and grows out of the necessity of the case, and has been accounted for on the ground that there is no grantee *in esse* capable of taking. The origin of the doctrine of dedication has sometimes been ascribed to *Lade* v. *Shepherd*, 2 Strange, 1004, decided about 150 years ago. That is the earliest case in which we find the word "dedication" used, and in which some of the requisites of a dedication are suggested. But, though it has been greatly developed and modified since that time, to meet the altered conditions of public needs, the doctrine had its roots in the common law for centuries before that case. The public right, however, was not described as held by dedication, but by custom. As to the rights of the public, some requisites of a good custom are not retained in the law of dedication, most notably that in relation to the time or duration of the public uses; others are. A custom to take a profit out of the land of another, to use it for purposes of profit, was not good. *Gateward's Case*, 6 Rep. 596; *Grimstead* v. *Marlowe*, 4 Term R. 717; *Mellor* v. *Spateman*, 1 Saund. 339; *Blew-*

*ett* v. *Treyonning*, 3 Adol. & E. 554; *Waters* v. *Lilley*, 4 Pick. 145; *Pearsall* v. *Post*, 20 Wend. 111; *Post* v. *Pearsall*, 22 Wend. 425; *Littlefield* v. *Maxwell*, 31 Me. 134. All that could be claimed was an easement; as, a right of way. The claim of right to take a profit from the soil of another had to be supported by grant or by prescription, which supposes a grant; and as the public, as such, could not take a grant, of course it could not have such a right. We have not been referred to any case, nor been able to find any, which decides that the law of dedication is not subject to this restriction, or which holds that a dedication may be made to take a profit out of the land, or to use it for purposes of profit. The case of *Pearsall* v. *Post*, especially in the court of errors, goes over the whole doctrine, and denies that such a right can be claimed by dedication. Most of the land throughout the country, appropriated under the right of eminent domain, is taken and employed in the public use, through the agency of business corporations. They are authorized to employ the land taken, not only for the public benefit in the public use, but for carrying on the business they are authorized to transact; not only to serve the public, but to serve their own private interests,—to make for themselves a profit out of the use of the land taken. Where land is to be employed in the public use by a business corporation or an individual, there is no reason founded on necessity for the doctrine of dedication, because there is, in such case, a grantee *in esse* capable of taking a grant.

Private property cannot be acquired by dedication. It is argued that a railway company is a public or *quasi* public corporation; that its purposes and duties are public; that its use of land, held and used by it for the purpose of its railroad, is a public use; and that lands dedicated for that purpose are dedicated to the public for public use. From the arguments used it might be inferred that the title of such a company to the lands held by it is merely nominal, held by an agent for its principal, no rights or interests of its own being involved. Fortunately for such corporations, and for the public also, this is not the view the courts take of the relation between the corporation and the property held by it. The lands acquired by the corporation for the purposes of its enterprise are, so

far as the right of property is concerned, private property. If purchased, the corporation pays for them; if taken in the exercise of the right of eminent domain, it pays the compensation. It is true they are charged with a public duty, which the corporation, in consideration of the rights and powers conferred on it by the state, assumes to perform, and which the state can compel it to perform. But its rights in the lands as its own property are secure and inviolable. *State* v. *Chicago, Mil. & St. Paul Ry. Co.*, 36 Minn. 402, (31 N. W. Rep. 365.) The corporation, for its own profit and advantage, accepts the franchises offered by the state, and assumes to perform the functions and duties required by the state, not with property furnished it by the state, but with its own property. The ownership of the property is private, though the use required to be made of it is public. The private ownership prevents the acquisition of it by dedication.

There are several minor questions made by appellant: *First.* The deed of Clark W. Thompson, which was intended to, but through mistake and inadvertence did not, convey to defendant the land in controversy, ought to be reformed. There is this sufficient reason why it cannot be in this action: The necessary parties are not before the court. The owners of the land, the heirs or devisees of Thompson, are not parties. *Second.* The agreement by Thompson to grant a right of way to the corporation cannot, after a location of the railroad pursuant to it, be regarded as a mere license revocable by the licensor. The findings of fact do not come up to the requirements of this proposition; for the finding as to the agreement is not that Thompson would convey the land in controversy, nor that he would convey the strip 130 feet wide of which such land is a part, nor any specified width, but that he would convey a strip sufficient for the right of way of the railroad and its structures and appliances. He did convey a strip 100 feet wide. And there is no finding that the company located its line pursuant to the agreement. The finding is: "But it does not appear from the evidence that the Southern Minnesota Railroad Company constructed its railroad on the premises in question because of or relying on such promise." This is a very common, though not a commendable,

mode of stating a finding against an allegation of fact.    Such a finding must be taken as a finding against the party having the affirmative of the issue to which it refers.

It is claimed by appellant that, when an owner of land has consented to the occupation thereof by a railroad with its tracks and appliances, he cannot afterwards maintain ejectment for the land, especially where, as in this case, the entry and possession antedate Laws 1875, *c.* 98, (Gen. St. *c.* 34, § 33.)    Where the corporation has not acquired the fee of or an easement in the land, a right to retain possession of it, either by grant from the owner or in the manner prescribed by its charter or the statute, where the owner has not, in some legal way, lost his right to the possession, he is, of course, entitled to some remedy.    As against a private individual, entering merely by license, and withholding the possession, the obvious remedy would be by ejectment.    It is difficult to see why, even in the absence of a statute on the subject, he should be deprived of that remedy because the one in possession without right is a railroad corporation, unless, because of the public interest requiring that the line of railroad shall be continued, and not broken by the owner of a piece of land ejecting the company, public policy required the remedy by ejectment to be denied.    Without considering whether the decisions denying the remedy on that proposition are sound, it is enough to say that the legislature is the guardian of the public interests, and that it manifestly considered the public interest sufficiently provided for by allowing a railroad company, sued in ejectment for land across which it has constructed its road, to turn the action into a proceeding to acquire, under the right of eminent domain, the land or an easement therein.    Gen. St. 1878, *c.* 34, §§ 33–38, inclusive.    We think that statute applicable whether the railroad company went into possession before or after its passage, and by its terms it permits the action whether the company took possession with or without the owner's acquiescence, provided it has not made compensation therefor.    The exemption from the remedy by ejectment, if such exemption existed, was not a vested right in the corporation.    It was not because of any property right in it, but because of what was supposed to be the public interest; and when the legislature, as it did by the act referred

to, determines that the public interest no longer requires the exemption to exist, it ceases. The act applied to all future actions.

The allowance as damages of the mesne profits, from the revocation by the death of Thompson of his license to the company to enter upon and possess the land, was correct. There are no facts found making it appear that after his death the license was renewed or continued by his representatives.

Judgment affirmed.