# CALVIN JOHNSON AND ANOTHER v. ANTON A. GIESE AND OTHERS.[1]

May 19, 1950.

No. 35,258.

[1]Reported in 42 N. W. (2d) 712.

*Wegner, Kohlan & Santee,* for appellant.
*Henry G. Young,* for respondents.

LORING, CHIEF JUSTICE.

This was an action in the district court in Mille Lacs county for partition. Defendant Anton A. Giese counterclaimed for reformation of certain deeds. The court made findings of fact and conclusions of law in favor of plaintiffs. Defendant Anton Giese first appealed to this court from the order denying his motion to amend the findings and conclusions of law and order for judgment, which we held nonappealable. Johnson v. Giese, 230 Minn. 185, 40 N. W. (2d) 909. Defendant Giese is now here on an appeal from the judgment.

Plaintiffs commenced this proceeding for partition of a tract of land in government lot 4, section 17, township 42 north, range 26 west, Mille Lacs county. They alleged that they and defendants are joint tenants and that plaintiffs own a one-sixth part of the premises. Defendant Anton Giese counterclaimed for the reformation of certain warranty deeds dated June 5, 1929, conveying property which Anton and Jeanette Giese, his former wife and the mother of plaintiffs, held as tenants in common, to the Warren Whites and from the Whites to the Gieses as joint tenants. These deeds, Anton asserts, omitted, by mistake of the scrivener, Anton and Jeanette's undivided one-half interest in government lot 4, which includes the property here in dispute. The deeds were recorded on December 23, 1943, but it is Anton's claim that he did not learn of the omission until May 1945. It was agreed that the counterclaim should be tried and finally disposed of before the trial of the partition issue.

It was proved at the trial that Anton and Jeanette Giese, together with Albert J. and Georgiana White, became tenants in com-

mon by deed in 1926 of government lot 4, section 17, and the southeast quarter of the southeast quarter of section 18, township 42, north, range 26 west, Mille Lacs county. Government lot 4 lies adjacent to and southwest of Mille Lacs Lake and contains 32.80 acres. By a subsequent deed in 1926, the Albert Whites deeded to the Gieses their interest in the southeast quarter of the southeast quarter of section 18 and that part of government lot 4 described as the westerly 12.84 acres. Thus, after this transaction, the Gieses owned all the southeast quarter of the southeast quarter of section 18 and the westerly 12.84 acres of government lot 4 as tenants in common and an undivided one-half interest in the remainder of lot 4 as tenants in common. November 18, 1935, Albert White and the Gieses exchanged holdings. The Gieses conveyed the tract in section 18 and the westerly 12.84 acres in lot 4, section 17, to the Albert Whites in joint tenancy, and the Whites conveyed their undivided one-half interest in the rest of lot 4 to the Gieses in joint tenancy.

Prior to this last transaction, discord had arisen between plaintiffs and their mother, which, Anton contends, led to the transfer in 1929 of the title from tenancy in common to joint tenancy. Deeds, however, covering only the tract in section 18 and the westerly 12.84 acres of government lot 4 were prepared at the bank at Onamia, and transfer of ownership from tenancy in common to joint tenancy was, as stated above, effected through the Warren Whites. It is Anton's contention that he and his wife intended to include their undivided one-half interest in the rest of government lot 4, which was also held by them as tenants in common in these "correction" conveyances,[2] but that the scrivener, unknown to them, failed to include this property contrary to their intent.

Thus, after the transaction in 1935, the Gieses became the sole owners of all the land in lot 4 (except the westerly 12.84 acres), but they were owners of record as tenants in common of their orig-

[2]Each deed contained the statement "for the purpose of title correction and not for sale."

inal undivided one-half interest and as joint tenants of the un-divided one-half interest received from the Albert Whites.

May 31, 1939, Jeanette died. On June 2, 1943, Anton conveyed by warranty deed certain small plots in the northerly part of government lot 4, referred to by the trial court as "Tract C" to Gertrude I. Hainer, but her attorney advised that the title to "Tract C" was not good. Consequently, Anton signed for Gertrude Hainer an application for probate proceedings, and on July 9, 1945, the probate court of Mille Lacs county issued a decree in the matter of the estate of Jeanette Giese (erroneously) reciting that "Tract C" had vested in Anton Giese, Calvin Johnson, and Donald Giese, in each an undivided one-third as tenants in common. At that time, Calvin Johnson and his wife had already quitclaimed to Anton. Donald Giese and his wife quitclaimed a month later. Subsequent to these transactions, defendant Hub Clemmers took possession, under a contract for deed, of the remainder of lot 4, owned by Anton and referred to by the trial court as "Tract D."

This action was brought for partition of "Tract D"[3] by plaintiffs as heirs of Jeanette Giese. The court found the facts as stated above and that the Gieses' lake property had been purchased with the earnings of Anton, but it refused to find that Anton intended to include all his lake property in the "correction" deed to the Warren Whites.

■ The principal issue is whether the evidence compels findings and a conclusion that Anton Giese is entitled to reformation.

In Barnum v. White, 128 Minn. 58, 61, 150 N. W. 227, 228, we said:

"* * * A written contract may be reformed where there has been an actual agreement between the parties and their minds have met on the terms which they intended the writing to express, and where the writing in fact fails to express those terms, and such failure was due to mutual mistake, or to mistake on one side and fraud or inequitable conduct on the other. St. Anthony Falls Water-

---

[3]The complaint asks for partition of lot 4. The trial court found that partition of "Tract D" was requested.

Power Co. v. Merriman, 35 Minn. 42, 27 N. W. 199; Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705. To justify a court in reforming a written contract upon oral testimony, the essential facts must be proved by evidence that is clear, unequivocal and convincing. Something more than a mere preponderance of evidence is required."

Sloan v. Becker, 34 Minn. 491, 26 N. W. 730. Proof beyond a reasonable doubt, however, is not necessary. Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 246 N. W. 477.

In the case at bar, we are of the opinion that the evidence is clear and convincing that Anton and his wife, Jeanette, intended to place all their property at Mille Lacs Lake in joint tenancy. On direct examination, Stella D. White testified:

"A. Mrs. Giese said to me one day over the telephone 'Well, we have our property all fixed up now in joint tenanacy and I am glad that is off of my mind'. She just mentioned that it was all taken care of."

On cross-examination, she said:

"Q. Who told you to say that Mrs. Giese said she wanted it as it was?

"A. Who told me to say that Mrs. Giese said she wanted it as it was?

"Q. Yes.

"A. Nobody told me to say that. That is what Mrs. Giese said to me. Didn't I swear to tell the truth and all the truth?"

Mrs. White's testimony, when read with the other evidence in the record, compels the conclusion that she meant that all their property was put in joint tenancy. While describing the steps which led up to the "correction" deeds, Mrs. White said:

"A. He said they wanted to change the papers on their property at the lake and wanted to know if they could transfer the property to us and we transfer back to them for the sake of having joint title of the property.

"Q. Was there anything said to you about the extent of the property?

"A. It was his property at the lake.

"Q. It was his property at the lake?

"A. Yes, sir."

The evidence also shows that Jeanette was motivated to change the title to this property because of discord between her and her sons. The property had been purchased with Anton's earnings deposited in a joint account with Jeanette. Neither husband nor wife made a will which might have disposed of the property. Hence, this evidence, taken with Anton's uncontradicted testimony that it was his understanding and their intent that the "correction" deed transaction was for the purpose of placing all their property in joint tenancy and that he believed the deeds did cover all such property, is convincing that there was a valid agreement between the parties to place all their property in joint tenancy, but that, through mistake of the scrivener, this intention failed. Mahoney v. Minnesota Farmers Mut. Ins. Co. 136 Minn. 34, 36, 161 N. W. 217, where this court said:

"It is elementary that where parties verbally agree upon all the terms of a contract, and through the mistake of the scrivener in reducing the contract to writing the written document does not express the real agreement of the parties, a court will reform the written contract and make it conform to the real agreement orally made."

When the Gieses exchanged properties with the Albert Whites in 1935, they took title to the land as joint tenants. The only property which was not in joint tenancy was their undivided one-half interest in lot 4. No other explanation of the transaction with the Warren Whites is reasonable except that there was a mistake by the scrivener. It is true that Anton signed a petition for a decree of descent in 1945, but this step was taken to expedite the sale to Gertrude Hainer. We hold that the evidence entitled Giese to reformation.

■ Plaintiffs contend that they are not proper parties to Anton's counterclaim for reformation. In Watson v. C. M. & St. P. Ry. Co. 46 Minn. 321, 48 N. W. 1129, the administrator of the grantor sued to recover possession of a small strip of land which by mistake and inadvertence had been omitted in the conveyance from the grantor to defendant. We held that the deed could not be reformed because the necessary parties—the owners of the land, the heirs or devisees of the grantor—were not before the court. In the case at bar, Anton Giese is asking to have the deeds to and from the Warren Whites reformed. As far as the deed to the Whites is concerned, plaintiffs, as heirs of Jeanette, are proper parties to the reformation of that instrument. Watson v. C. M. & St. P. Ry. Co. *supra*. Since the Whites merely acted as conduits of title in the transaction in which the property held in common tenancy by the Gieses was placed in joint tenancy, the court will look through the form to the real interests involved. The Whites have no interest to protect, whereas plaintiffs, heirs of Jeanette, have, on the face of the deeds as executed, a substantial interest in the property in question.

■ Plaintiffs contend that the counterclaim does not state facts sufficient to constitute a cause of action, and the trial court agreed, although it permitted Anton Giese to produce his evidence before passing upon plaintiffs' objection.

Defendant Giese's pleading in this case is not a model one, but, in our opinion, it is sufficient to inform plaintiffs of the grounds of his counterclaim. Since the instruments to be reformed were introduced at the trial without objection, plaintiffs' rights, if any, have not been prejudiced.

■ Finally, plaintiffs contend that Giese's conduct in signing the petition to probate Mrs. Giese's estate created an estoppel against him and that he was guilty of laches.

We are of the opinion that Giese's conduct did not create an estoppel. There was no proof that his act in signing the petition was made with the intention, either actual or inferable, that it should be acted upon by plaintiffs. Bigelow, Estoppel (6 ed.) c. XVIII, § 7. The proceeding was brought to expedite the sale to

Gertrude Hainer. Had they inquired of their stepfather as to the facts, they would have discovered the truth, but they did not. Clarke v. Milligan, 58 Minn. 413, 59 N. W. 955; cf. Chadbourn v. Williams, 45 Minn. 294, 47 N. W. 812; Macomber v. Kinney, 114 Minn. 146, 128 N. W. 1001, 130 N. W. 851; Froslee v. Sonju, 209 Minn. 522, 297 N. W. 1. Instead, they waited two years and then commenced this action. These facts do not constitute an estoppel. As was said in Froslee v. Sonju, 209 Minn. 526, 297 N. W. 4, "No estoppel arises where the conduct of the party sought to be estopped is due to ignorance founded upon an innocent mistake." Schaefer v. Nylin, 162 Minn. 170, 202 N. W. 439. Likewise, we do not find that defendant Anton Giese was guilty of laches, since he was in possession of this property until conveyed to defendant Clemmers. 4 Dunnell, Dig. & Supp. § 5355.

The judgment is reversed and the case remanded with instructions to the trial court to amend its findings and conclusions in accordance with this opinion and to enter judgment of reformation in favor of defendant Anton Giese.

So ordered.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.