LEON A. GLASER v. JOHN G. ALEXANDER
AND ANOTHER.

76 N. W. (2d) 682.

April 13, 1956—No. 36,776.

*Emerson Hopp,* for appellant.

*Arthur H. Lindeman,* for respondent John G. Alexander.

*Henry Halladay, Gregg Orwoll,* and *Dorsey, Colman, Barker, Scott & Barber,* for respondent Pearl Assurance Company, Ltd.

NELSON, JUSTICE.

Plaintiff brought an action against John G. Alexander; Transcontinental Insurance Corporation; and Pearl Assurance Company, Ltd., as defendants, to reform an insurance policy against sprinkler leakage issued by Pearl Assurance Company, Ltd., on May 28, 1951, in the amount of $7,000 for a term of 3 years. He alleged that said policy had been issued contrary to his directions for annual automatic renewal of separate sprinkler leakage and fire insurance policies; that he was without the required protection of fire insurance at a time when he suffered damages by fire; and that this result was due to the neglect and failure of defendants to issue and provide, as had formerly been the custom, separate fire and sprinkler loss policies in the amount of $7,000 each.

Plaintiff was the owner and operator of a wholesale business located at 109-115 (2d floor) North Fifth Street in the city of Minneapolis. The defendant John G. Alexander was his landlord. The defendant Alexander also conducted a real estate and property management agency at 736 Lumber Exchange Building, Minneapolis, and sold insurance. It appears from the evidence that dating back

to 1943 and for the several years thereafter, up to either April or May 1949, he had annually sold and issued to plaintiff separate fire and sprinkler leakage policies in the aforesaid sums. Some of the insurance policies issued during those years may have been placed with the Transcontinental Insurance Corporation, originally named as one of the defendants. The evidence discloses that the plaintiff paid a Transcontinental policy premium May 23, 1949, but the record does not disclose whether the policy issued was a fire policy or a sprinkler leakage policy. Some of the policies may have been placed with other companies, but if so, they are unnamed in the record. The one and only policy issued by the Pearl Assurance Company, Ltd., was a 3-year sprinkler leakage policy bearing date May 28, 1951. Defendants hereinafter will be referred to as Alexander, Transcontinental, and Pearl.

A fire destroyed plaintiff's wholesale business and property on April 19, 1952, which after salvage caused him an alleged loss of $14,289.66. Plaintiff was at the time insured in the American Insurance Company of Newark, New Jersey, in the amount of $14,000 protecting against loss by fire for a 1-year term beginning January 4, 1952. An extended coverage endorsement had been attached. This policy provided a 90 percent coinsurance clause. Plaintiff alleges that under its terms he was penalized and caused to suffer a special loss due to the fire of $976.26. It appears from the evidence that plaintiff also carried sprinkler leakage coverage with the American Insurance Company.

Plaintiff seeks reformation of the sprinkler leakage policy issued in the amount of $7,000 dated May 28, 1951, so as to provide fire coverage in the same amount, made simultaneously effective for one year, and seeks recovery from defendants of their proportionate share of plaintiff's loss and the special loss for which he was penalized by reason of failure to have 90 percent insurance as required by the coinsurance clause.

Prior to the trial, the court granted the motion of Transcontinental for judgment in its favor. A jury was impanelled at the outset of the trial and heard the evidence submitted on behalf of plaintiff.

At the close of plaintiff's testimony, the remaining defendants each moved the court below for a directed verdict on the grounds that the evidence at the time failed to prove a cause of action and that it precluded the plaintiff from a reformation of the alleged insurance contract. The trial court granted the motion and disposed of the matter by instructing the jury to find for the defendants under the direction of the court. He informed the jury that in his opinion "there is no issue of fact for the jury to determine in so far as this specific lawsuit is concerned." The balance of his instructions reads as follows:

"* * * This is an action brought to reform an insurance contract. The Court feels that the testimony must be clear and convincing, and the Court does not feel it is to entitle the plaintiff to reformation of an insurance contract. However, I will say for the record, I am not determining this on any negligence on the part of the agent for having failed to purchase fire insurance. It is purely on the basis of law as to reformation of an insurance contract that the Court is directing this verdict."

Plaintiff moved the court below for an order setting aside its previous order directing a verdict in favor of defendants and granting plaintiff a new trial. The motion was denied and plaintiff appeals. The trial court's order "settling case" reads in part as follows:

"* * * there was an off-the-record statement by plaintiff's attorney during the course of the trial which was unintentionally not incorporated in the record except in the Court's statement to the jury * * * which statement by plaintiff's attorney was to the effect that the plaintiff's theory of recovery was based entirely upon a claimed right to reform the insurance policy introduced in evidence * * *."

While plaintiff lists several separate assignments of error, we will at the outset consider only the assignment of error which states that:

"The trial court erred in ruling that plaintiff had not produced 'clear and convincing testimony' so as to justify a reformation of his insurance contract."

The question as to the effect of plaintiff's proof to meet the requirements for reformation is of importance. The sprinkler leakage policy issued by Pearl with endorsements attached was received in evidence. Plaintiff's check stub was introduced dated May 25, 1946, showing payment to order of John G. Alexander for $36.85, indicating a fire insurance premium with tax totaling $18.71 and a sprinkler leakage insurance premium with tax totaling $18.14. The two items total $36.85. The record is clear as to the purpose for which the check was issued. The next exhibit is a canceled check dated April 5, 1947, indicating premium on two policies of insurance totaling premium $36.85. A canceled check for March 23, 1948, discloses payment of premium on fire and sprinkler insurance in the amount of $36.85. Two canceled checks were admitted in evidence to show insurance premium payments for 1949. One check dated May 23, 1949, for $18.14, Transcontinental policy, and one check dated May 31, 1949, for $18.71 indicating a policy number without company name. The two payments for the month of May 1949 total $36.85. All of the aforesaid exhibits were received in evidence.

Plaintiff offered in evidence a canceled check in the amount of $30.80 dated May 15, 1950, payable to the order of John G. Alexander, indicating a payment of Inv. 4/18. There is nothing on this check to indicate a premium payment. The check heretofore referred to as issued March 23, 1948, in addition to an endorsement showing payment of fire and sprinkler insurance in the amount of $36.85, also indicated an additional payment for office repairs of $83.74, making the total of that check $120.59. It became evident from this exhibit that the plaintiff made payment at times to Alexander for other items than insurance. The court refused to admit the canceled check of $30.80 as evidence of payment of insurance premiums as of May 15, 1950. The two insurance premiums had annually called for a payment of $36.85. There was a discrepancy here and no explanation. The plaintiff was unable to produce and offer in evidence Inv.

4/18; he failed to produce and offer insurance policies so issued in evidence or to explain why these were not available; and he made no attempt to bring in the policy registers from the issuing insurance agency's office, which he might have done by subpoena and proper notice to produce. There was no effort made to call Alexander and cross-examine him as an adverse witness. This left a break in the chain of payments including the years of 1950 and 1951, a period of two years, before the fire on April 19, 1952, except for a sprinkler leakage premium payment of June 6, 1951. There is no proof of any fire insurance premium payment after May 31, 1949, and no evidence explanatory of why no insurance premiums and tax totaling $36.85 was paid in 1950, and no fire insurance premium in 1951 or fire insurance policies issued and delivered through the Alexander Insurance office since 1949.

A canceled check dated June 6, 1951, payable to the order of Alexander for $48.30 was offered and received in evidence. This check bears the following endorsement: Inv. 5/31 Ins. Policy SL 903347. It was admitted together with another exhibit which consisted of a statement from Alexander: "John G. Alexander, Real Estate—Property Management, Insurance, 736 Lumber Exchange Building, May 31, 1951." It was addressed to plaintiff and contained in part the following recital: "Pearl Assurance, SL 903347 Fire & Sprinkler leakage 5/28/54, $48.30." The evidence is clear that no fire policy was ever at any time issued by the Pearl to the plaintiff, and the evidence is also clear that the first and only policy issued by the Pearl to plaintiff as the assured was a sprinkler leakage policy No. SL 903347, dated May 28, 1951, and expiring May 28, 1954, for a premium of $48.30. The amount of the policy was $7,000. Endorsements were attached, issued June 4 and June 11, 1951, fixing coinsurance clause at 80 percent reducing premium originally charged. The first endorsement also made correction in the numbered location of plaintiff's business establishment. The Pearl sprinkler leakage policy of May 28, 1951, and the American Insurance Company fire policy of January 4, 1952, were received in evidence.

The principal issue is whether evidence compels findings and a conclusion that plaintiff is entitled to reformation. Did the plaintiff on his evidence make out a prima facie case showing clear and convincing proof that he was entitled to reformation?

■ This court has repeatedly held, that, to reform a written instrument the evidence must be clear, persuasive, and convincing. In one of the early cases, Guernsey v. American Ins. Co. 17 Minn. 83 (104), this court held that to authorize the reformation of a contract on the ground of mistake, the mistake must be clearly made out beyond all reasonable doubt. The Guernsey case was specifically overruled on that point in Wall v. Meilke, 89 Minn. 232, 240, 94 N. W. 688, 692, where this court announced that "The true rule is that equity will not reform an instrument on the ground of mistake unless the evidence is clear and convincing."

Mr. Justice Dibell speaking for this court in Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 50, 246 N. W. 477, 478, said that "* * * the same thought may be expressed in different words, but they must not go so far as to require proof beyond a reasonable doubt." However, something more than a mere preponderance of the evidence is required.

In Fritz v. Fritz, 94 Minn. 264, 266, 102 N. W. 705, 706, a case for reformation, Mr. Justice Jaggard, speaking for this court, summed up the requirements, which it appears may be aptly applied to the situation in this case, as follows:

"The determination of the issues in this case involves the application of well-settled and elementary doctrines of equity. (a) Before a court of equity will interfere to reform a written instrument it must appear, substantially as alleged in the pleadings, that there was in fact a valid agreement sufficiently expressing in terms the real intention of the parties; that there was in fact a written contract which failed to express such true intention; and that this failure was due to mutual mistake, or to mistake of one side and fraud or inequitable conduct of the other. (b) These facts must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing and not doubtful. Mere

preponderance of testimony is not sufficient. (c) Such relief will be extended to those only who have not by their own conduct (as laches, negligence, or otherwise) put themselves in such a position as to render it unjust to change the situation, especially when such change might injuriously affect the rights or status of innocent third parties. * * * These principles are so obvious and elementary as to render further citations unnecessary. The plaintiff has failed to bring his case within any of these rules."

In the recent case of Farmers' Store v. Delaware Farmers' Mut. F. Ins. Co. 240 Minn. 170, 174, 59 N. W. (2d) 889, 892, we restated the rule with supporting citations in the following but somewhat different words:

"Where the right of reformation is predicated upon mutual mistake and there is no evidence of fraud or inequitable conduct, the evidence to justify reformation must be clear, precise, and convincing. Johnson v. Giese, 231 Minn. 258, 42 N. W. (2d) 712; Keogh v. Sharon Township Mut. F. Ins. Co. *supra;* Mahoney v. Minnesota Farmers Mut. Ins. Co. 136 Minn. 34, 161 N. W. 217; Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705; 5 Dunnell, Dig. & Supp. § 8328, *et seq*. It must establish that the instrument sought to be reformed fails to embody the actual agreement between the parties and that the failure in this respect was due to the mutual mistake of the parties rather than the unilateral mistake of one party. Johnson v. Giese, *supra;* Mahoney v. Minnesota Farmers Mut. Ins. Co. *supra;* Fritz v. Fritz, *supra;* 5 Dunnell, Dig. & Supp. § 8329."

We have said:

"It is elementary that where parties verbally agree upon all the terms of a contract, and through the mistake of the scrivener in reducing the contract to writing the written document does not express the real agreement of the parties, a court will reform the written contract and make it conform to the real agreement orally made." Mahoney v. Minnesota Farmers Mut. Ins. Co. 136 Minn. 34, 36, 161 N. W. 217.

In Norman v. Kelso Farmers Mut. F. Ins. Co. 114 Minn. 49, 52, 130 N. W. 13, this court quoted the following with approval from Hay v. Star F. Ins. Co. 77 N. Y. 235, 240, 33 Am. R. 607, 610:

"The negligence of the plaintiff in not discovering the change and laches, in not sooner seeking relief, are questions which make the propriety of granting relief in a given case, discretionary. * * * Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments."

We recognize it to be well established that, in a suit for reformation such as we have here, an insurance policy may be reformed even after the loss insured against so as to express the real intent of the parties. It is the duty of an insurer to issue a renewal policy on the same terms and conditions as the original contract, and if it fails to do so, the court may grant relief and order the renewal policy reformed to give effect to this result. This appears to be true even though the insured did not read the policy and discover a material change until after the occurrence of the loss. It may well be discretionary, however, with the court as to whether it ought to grant or deny relief on the ground of plaintiff's neglect to discover the change sooner.[1]

The plaintiff has united an equitable with a legal cause of action. He attempts on the equity side to reform the policy, and on the law side to recover for a loss under the policy as reformed. The record clearly indicates that the case was so submitted. Consequently, when the court below instructed the jury to find for defendants, it did not (and so stated for the record) determine whether the negligence of the insurance agent in failing to purchase fire insurance to protect plaintiff, if proven, gave him a right at law to recover damages. The court simply determined that the evidence was insufficient, from a legal standpoint, to warrant reformation of the alleged insurance contract or policy. This left nothing for the jury's determination, the right to recover damages for a loss being dependent on a policy as reformed.

[1]See, 13 Appleman, Insurance Law and Practice, § 7653.

The issue, if such exists, as to any negligence on the part of the agent for having failed to furnish fire insurance remained undetermined at the trial below. There can be no determination of that issue on the record as submitted before this court.

This action to reform a policy of insurance and for a recovery of damages thereon as reformed, due to a fire loss, presents a situation where an equitable cause of action is united with a legal cause of action. The plaintiff's right to proceed on the legal cause of action at the trial in the instant case and upon the course of procedure adopted at the trial was dependent upon a determination of the issue of reformation, that issue being triable to the court as a matter in equity.

■ In a case for reformation of an insurance policy on the ground of mutual mistake, it is required that the party who bases his claim on the right of reformation show by competent evidence that the contract to be reformed was the contract agreed upon between the parties.

Nothing appears in the evidence to indicate that combination policies had been issued to plaintiff insuring against loss by fire and sprinkler leakage, or that such policies are ever issued in combination form. In fact, the evidence is clear, and it practically stands admitted, that only separate fire policies had been furnished by Alexander in the amount of $7,000 each in any period to which the evidence relates. No such policy, or a similar one, has been presented for reformation. The only policy to which reformation can be directed upon the record is the 3-year sprinkler leakage policy issued by Pearl May 28, 1951. Pearl has never issued a fire policy to plaintiff. It does not appear that an application was ever presented to Pearl or a request made to it to issue its fire policy on plaintiff's property or business establishment. It does not appear from the evidence that Pearl was ever connected with, or, that it was conversant with plaintiff's fire protection program. In reality it can hardly be said that any certain or definite insurance policy can be pointed to in the record to which equity may turn and offer relief. Clearly no equitable right has been established which places

a duty on Pearl to provide fire protection for plaintiff. With that, the right to reformation vanishes.

The action being one to reform an insurance policy, it is incumbent on plaintiff to offer in evidence by competent proof a policy, in the whole, which in some respect, presents a mutual mistake for consideration, or a mistake on one side and fraud or inequitable conduct on the other side. There is no clear and convincing evidence of mutual mistake, no fraud or inequitable conduct claimed. The reformation issue being equitable and triable to the court, its decision that the evidence was insufficient as a matter of law finds ample support in the record.

The issue of reformation having been determined adversely to plaintiff, other assignments of error become unimportant.

Affirmed.