**GUNHUS, GRINNELL, et al.,**
**Respondent,**

v.

**Robert D. ENGELSTAD, Appellant.**

**No. C6-87-284.**

Court of Appeals of Minnesota.

Oct. 6, 1987.

Review Denied Nov. 24, 1987.

David T. DeMars, DeMars, Turman & Johnson, Fargo, N.D., for respondent.

Paul A. Sortland, Fargo, N.D., for appellant.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a trial court judgment and order denying a new trial. The trial court held the lease at issue was not

unconscionable and appellant was required to perform his contractual obligations. The court also held the lease was renewed in a timely manner by respondent and respondent's claim for monetary damages is moot if appellant performs his obligations. Appellant claims the trial court erred because (1) a party to a contract may not be denied a jury trial where claims of misrepresentation, fraud and deceit are at issue; (2) the lease between the parties is unconscionable; (3) evidence admitted had not been disclosed to discovery requests; and (4) the court abused its discretion in denying a motion for new trial. We affirm.

## FACTS

In 1975 appellant purchased the real estate and structure located at 512 Center Avenue, Moorhead, Minnesota (hereinafter "leased premises") from respondent after the structure was damaged by construction work on an adjoining building. Appellant was one of the architects in charge of supervision and construction of the adjacent building. The parties agreed appellant would buy the damaged building, repair it, and lease it to respondent.

The lease, drafted by respondent, provided for an initial term of 10 years with an option to renew on the same terms for an additional 10 years. There was a three month written notice requirement prior to expiration for renewal.

Appellant is an architect by profession and was at the time of the transaction an experienced real estate owner, developer and businessman. At the time the lease was drafted, appellant was represented by and consulted with an experienced attorney.

Improvements to the structure were sufficiently complete to enable respondent to occupy the building on January 26, 1976. At this time respondent moved into the leased premises and began paying rent.

Periodically, from January 1976 through 1979, respondent exercised its option granted by the lease to obtain additional space in the building. At the time of trial, respondent was leasing approximately 8,782 square feet of the premises, including the 4,000 square feet of the original lease.

By letter dated December 14, 1984, respondent gave appellant notice of exercise of the option to renew or extend the principal lease and all supplemental leases. The initial lease term would have expired in January 1986.

Respondent paid all rents when due, including escalation payments. The lease agreement provides appellant pay taxes, utilities, electrical service and custodial care calculated from the base year of 1978, agreed to and fixed by the parties in the lease agreement.

Based upon expert testimony, the trial court found the roof of the leased premises leaked from and after the year 1979 and leaked seriously in the years 1983, 1984, 1985 and 1986. This has caused damage to the leased premises. The roof must be repaired or replaced to prevent future damage and inconvenience. Appellant has the obligation to repair the leaking roof even to the extent of replacement.

Since 1979, appellant received written and oral notice from time to time of the leaks in the roof. Appellant has attempted to fix the roof by periodic patching, which has not been successful.

The lease also requires appellant light and maintain the common areas. The trial court found appellant had not maintained the carpet in the common area in the "first class" standard required by the lease. The trial court also found a corridor between the Moorhead Center Mall and the leased premises is a common area within the terms of the lease and respondent is not responsible to maintain the corridor or pay any assessments for use levied by the mall.

The trial court also found appellant failed to keep sidewalks clean of snow and extraordinary dirt.

The trial court found respondent had not and could not misrepresent to appellant utilities and taxes would not increase from the years 1975–78. Even if such representations were made, such charges were not and are not within the control of respondent. Furthermore, appellant, as an expe-

rienced businessman, could not have justifiably relied upon representations of respondent and any claimed reliance by appellant was unreasonable.

By order for judgment filed November 21, 1986, the trial court held the lease was not unconscionable and is a valid obligation enforceable according to its terms. Therefore appellant was required to perform the duties and obligations of landlord. The trial court required appellant to (1) fix the leaky roof; (2) replace carpeting in the common area; (3) provide respondent a full accounting; (4) maintain sidewalks in a clean condition; and (5) maintain the "common area" of Moorhead Mall walkway abutting leased premises.

Additionally, the trial court found the lease was renewed in a timely manner.

Appellant's motion for new trial was denied and an order filed February 5, 1987 said the court's findings were not manifestly contrary to the preponderance and clear weight of the evidence presented. This appeal followed.

### ISSUES

1. Did the trial court err in refusing to grant the defendant a jury trial on his counterclaim?

2. Did the trial court err in concluding the lease was not unconscionable?

3. Did the trial court err in admitting evidence not disclosed in discovery?

4. Did the trial court abuse its discretion in denying appellant's post-trial motion for a new trial?

### ANALYSIS

1. Appellant contends a party to a contract action may not be denied a jury trial where the parties raise claims of damage by misrepresentation, fraud and deceit, and damage to property and other factual issues. Appellant's counterclaim alleged he signed the lease with the respondent law firm on the basis of fraudulent and negligent misrepresentations because respondent indicated there would be no increase in the utilities or property taxes from 1975–78.

Appellant contends it has a right to a jury trial on its counterclaim even though the underlying action is an equitable one. *See Olson v. Aretz*, 346 N.W.2d 178, 182 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Oct. 30, 1984). In *Aretz*, this court stated a trial court may not "impair the right to a jury trial even though an underlying action is an equitable one." *Id.* The *Aretz* court held it was reversible error not to allow a jury trial where one properly lies on a counterclaim. *See id.*

This case is distinguishable from *Aretz*. In *Aretz*, appellant raised issues of fact seeking money damages and had a constitutional right to a jury trial. *Id.* That is not the case here. The trial court found as a matter of law there were no issues of fact in appellant's counterclaim which would justify granting a jury trial.

Appellant asserts its claim is compulsory because it arises out of the transaction that is the subject matter of the opposing party's claim. Minn.R.Civ.P. 13.01.

The trial court held the denial of a jury trial for the counterclaim is not reversible error. The court reasoned the primary nature of the controversy was equitable, and reformation and equitable claims are not triable to the jury as a matter of right. *See Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734, 739 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985). The court held appellant's right to proceed on a legal cause of action at trial was dependent upon a determination of the issue of reformation, which was triable to the court as a matter of equity. *See Glaser v. Alexander*, 247 Minn. 130, 133, 76 N.W.2d 682, 687 (1956).

In *Glaser*, the supreme court held the plaintiff was not entitled to a jury trial since the trial court's determination of the equitable issues was dispositive of the plaintiff's cause of action. *Id.* 76 N.W.2d at 687–88. The court considered the equitable issue of reformation of an insurance policy. The supreme court found there was no clear and convincing evidence of mutual mistake, fraud or inequitable conduct claimed, which is similar to the allegations in this case. The court held the

equitable issue was triable to the court, and the evidence was insufficient as a matter of law, supported in the record. *Glaser*, 247 Minn. at 134, 76 N.W.2d at 688.

We find the same result in this case. The trial court found as a matter of law there was nothing in the evidence to warrant a jury trial. The trial court determined it was incumbent upon the defendant to offer by competent proof evidence the lease entered into between the parties was induced by fraud or inequitable conduct on the part of respondent. The trial court held:

> From the testimony at trial, it appears that [respondent] has not, did not or could not misrepresent to [appellant] that utilities and taxes for the leased premises would not increase and even if any representations were made such charges were not and are not within the control of [respondent] and [appellant] an experienced businessman could not have justifiably relied upon [any] representation of [respondent] and any claimed reliance by [appellant] was and is unreasonable.

■ Appellant was thus not entitled to a jury trial. We find the trial court did not abuse its discretion. We find its decision of insufficient evidence as a matter of law was supported in the record. *See Glaser*, 247 Minn. at 134, 76 N.W.2d at 688. It is well-settled in Minnesota in an equitable action a defendant, interposing a counterclaim alleging a legal cause of action, is not entitled as a matter of right to a jury trial. *Johnson Service Co. v. Kruse*, 121 Minn. 28, 32–33, 140 N.W. 118, 119–20 (1913).

2. Appellant argues the lease is unconscionable. First, appellant argues loss of $30,000 per year on the lease. Appellant claims this is due in part to the below-fair-rental-value of the property. Next, appellant argues the lease is both substantively and procedurally unconscionable. Appellant relies upon *Zontelli & Sons, Inc. v. City of Nashwauk*, 353 N.W.2d 600 (Minn. Ct.App.1984), *rev'd* 373 N.W.2d 744 (Minn. 1985), arguing since respondent made misrepresentations, the clause is unconscionable. Appellant argues respondent misrep-

resented the utilities and property taxes would not increase from 1975–78.

■ The trial court found respondent had not and could not misrepresent utilities and taxes for the leased premises would not increase. Furthermore, the trial court held even if any such representations were made, such expenses were not and are not within the control of respondent and appellant, as an experienced businessman, could not have justifiably relied on any such representation. Therefore any claimed reliance is unreasonable. We agree.

Appellant's reliance upon *Zontelli* is misplaced. First, *Zontelli* involved a contract where one of the contracting parties had sole discretion to increase the contract price. That is not the case here. Second, our decision in *Zontelli* was reversed by the supreme court. 373 N.W.2d 744 (Minn. 1985). The supreme court held the situation in *Zontelli* was extreme, with cost overruns and changed conditions not contemplated by the parties at the time of contracting. 373 N.W.2d at 744. The supreme court reasoned if the parties contemplated the extreme situation and had Zontelli agreed to limit its compensation, it would raise questions of unconscionability. *Id.* Furthermore, appellant's argument is countervailed because he asked the city assessor's office if the taxes or utilities would increase appreciably between 1975–78, which indicated it did not think so.

■ We agree with the trial court. This court will not rewrite, modify, or set aside a lease agreement which was agreed upon by the parties who were adequately represented during negotiations. *See Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 295, 135 N.W.2d 681, 687 (1965).

■ Appellant also argues no decent, fair-minded individual would view the result of the enforcement of the lease without being possessed of a profound sense of injustice. *Foursquare Properties Joint Venture I v. Johnny's Loaf & Stein, Ltd.*, 116 Wis.2d 679, 681, 343 N.W.2d 126, 127 (Wis.Ct.App.1983). We disagree. The lessee in *Foursquare* was not represented by legal counsel when it entered into the lease

and was unaware of an arrangement between the lessor and the city of a progressive tax assessment over the next three years.

4. Appellant next argues unfair consideration is a reason to hold the lease unconscionable based upon the below-market rent. We disagree. Minnesota follows the long-standing principle a court will not examine the adequacy of consideration as long as something of value has passed between the parties. *Estrada v. Hanson*, 215 Minn. 353, 356, 10 N.W.2d 223, 225–26 (1943).

5. Appellant argues the trial court erred in admitting evidence not disclosed. Appellant asserts many documents relating to the lease, supplemental leases and correspondence were not disclosed upon request. Many of the documents were from the respondent's correspondence file relating to the lease. Appellant claims prejudice because his attorney never had a chance to review the documents.

A defendant seeking to establish surprise must show he exercised ordinary prudence and did everything possible to prevent the asserted surprise from occurring. Minn.R.Civ.P. 59.01, subd. 3. The trial court found any surprise could have been prevented by ordinary prudence. *See Fifer v. Nelson*, 295 Minn. 313, 316–17, 204 N.W.2d 422, 424 (1973). The trial court held appellant presented no evidence the introduction of the alleged surprise evidence was prejudicial to him and appellant is not entitled to a new trial based upon surprise because appellant did not present any evidence revealing the introduction of the alleged surprise was prejudicial to him. It is well-settled that rulings as to the admissibility of evidence are left to the sound discretion of the trial court and its determination will control unless practical justice requires otherwise. *Colby v. Gibbons*, 276 N.W.2d 170, 175 (Minn.1978).

6. Finally, appellant argues the trial court abused its discretion in denying the motion for a new trial.

Motions for a new trial should be reluctantly granted by a trial court. *Hair v. Miller*, 374 N.W.2d 223, 224–25 (Minn.Ct. App.1985). The granting of a new trial rests largely in the discretion of the trial court and a trial court's decision will be reversed only for a clear abuse of discretion. *Ogema v. Bevins*, 341 N.W.2d 298, 299 (Minn.Ct.App.1983).

Appellant argues the trial court's findings were not supported by the preponderance and clear weight of the evidence and the testimony of the witnesses and exhibits during trial. Appellant recites numerous instances where appellant argues evidence supporting a decision in his favor and concludes it was an abuse of discretion for the court to ignore this evidence and not make findings regarding his claims. We disagree.

The trial court found a new trial need not be granted because its findings are not manifestly contrary to the preponderance and clear weight of the evidence. *See Miller*, 374 N.W.2d at 225. The trial court did not abuse its discretion.

## DECISION

The trial court (1) did not err in refusing to grant appellant a jury trial on its counterclaim when it was dependent on the underlying equitable action, (2) properly held the lease was not unconscionable because there were no misrepresentations by respondent, (3) appellant was fully aware of all lease provisions, (4) did not err in admitting nondisclosed evidence when no prejudice was shown, and (5) did not abuse its discretion in denying appellant's post-trial motion for new trial.

Affirmed.